Opinion issued August 11, 2016



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-15-00220-CR

NO. 01-15-00221-CR

NO. 01-15-00222-CR

_____

**GARY JAMES COX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 13-CR-0183, 13-CR-0184 & 14-CR-3651**

---

**O P I N I O N**

Appellant, Gary James Cox, was charged by indictment with aggravated sexual assault of a child,[1] failure to comply with registration requirements for a sex offender,[2] and attempted solicitation of sexual performance of a child.[3] Appellant pleaded not guilty. The jury found him guilty of all three charges. The trial court found the enhancements true and sentenced Appellant to life imprisonment, ten years' confinement, and ten years' confinement, respectively, with the sentences to be served concurrently. In one issue on appeal, Appellant argues that the trial court abused its discretion by admitting 2,000 images and videos of child pornography possessed by Appellant.

We affirm for all three causes.

## Background

Tom and Debbie B. were friends with Appellant when he became homeless. Taking pity on him, they would occasionally pick him up and feed him or put him in a hotel. During a family vacation in the summer of 2013, Tom and Debbie invited Appellant to housesit for them in League City, Texas. By that August, their son had reached the age of majority and moved out of their house. Tom and Debbie invited

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2015).

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a) (Vernon Supp. 2015).

[3] *See* TEX. PENAL CODE ANN. §§ 15.01(a), 43.25(b) (Vernon 2011).

2

Appellant to move into their son's old room, and Appellant accepted. He lived with them from August 2013 to December 2013.

During this time, Tom and Debbie's daughters still lived at the house. Their older daughter, V.B., was 13 during the time of Appellant's stay. Their younger daughter, L.B., was three. On occasion, Appellant would be at the home with the daughters while the parents were not home. This included an occasion when Tom and Debbie were away for two days.

In December, Tom and Debbie discovered V.B. had a cell phone, which they had not given to her. On it, they found messages between Appellant and V.B. Some of Appellant's text messages to V.B. were sexually suggestive. In one exchange, Appellant asked V.B. to send him nude pictures of herself. Tom and Debbie kicked Appellant out of their house and notified the League City Police Department. When the daughters were taken to the Children Advocacy Center, L.B. made an outcry against Appellant.

At trial, V.B. testified that Appellant had given her the phone that her parents found. She testified that, before one exchange of messages between them, Appellant had shown her a picture of himself nude. The picture was on his phone, and he had shown it to her at a time when they were the only two people in the house. Some time after that, they exchanged the following messages:

[Appellant:] Do you want to hear something funny?

3

[V.B.:]        Ok

[Appellant:] Remember those pics of me...... The special ones?

[V.B.:]        Huh

[Appellant:] The ones of me, nude.

[V.B.:]        Ya

[Appellant:] Well, to make it fair, where's the pics of you? Lol[4]

[Appellant:] Gotcha

[Appellant:] 😜

[V.B.:]        Uhh. I'm ok

[Appellant:] Lol, but now I'm supposed to see your pics....lol

[Appellant:] I'm just teasing with you

[V.B.:]        I know... Phones about to die

[Appellant:] Then you better take the pics fast....hahaha

V.B. did not send Appellant images of herself.  This exchange formed the basis of the State's charge against Appellant of attempted solicitation of sexual performance of a child.

---

[4]    "LOL" is a recent, common abbreviation, meaning "Laughing out loud; laugh out loud (used chiefly in electronic communication to draw attention to a joke or amusing statement, or to express amusement)."  Oxford Dictionaries, http://www. oxforddictionaries.com/us/definition/american_english/lol (last visited February 12, 2016).

Appellant's defense to this charge during trial was that Appellant was only joking and, accordingly, never intended for V.B. to send him nude pictures. During his opening statements to the jury, Appellant's counsel argued,

> I think the evidence will show totally inappropriate text messages from my client to [V.B.]. I believe the evidence will show that. But the evidence will not show that Gary Cox had the intent of actually trying to get [V.B.] to send him a nude picture. Rather, I think the evidence will show totally inappropriate humor or inappropriate attempt at humor from my client to [V.B.], but nothing more.

During his cross-examination of V.B., Appellant's counsel emphasized that Appellant repeatedly used "LOL" during the exchange and that he specifically said he was "just teasing" her.

To develop the charge of aggravated sexual assault of a child, the State presented the testimony of L.B.[5] She was three years old at the time of the offense, but was five years old at the time of trial. When presented with a diagram of the human body, she referred to the vagina as the "bottom" and the penis as the "front." She testified that Appellant had touched her on her "bottom" with his "front."

---

[5] After the trial court admitted the exhibit containing the child pornography pictures and videos—the sole issue raised on appeal—the State also presented the testimony of the child abuse specialist at the Child Advocacy Center, Angie Attaway, to whom L.B. made her first outcry against Appellant. Because our review of the admitted evidence is based on the record before the trial court at the time of the ruling, Attaway's testimony is not a part of our review. *See Rangel v. State*, 250 S.W.3d 96, 97–98 (Tex. Crim. App. 2008) (holding, unless issue is relitigated later in trial, appellate courts review trial court's ruling on admission of evidence based on record at time of ruling).

Appellant did not have on any pants or underwear, and he took down her pants and underwear. He was moving and something came out of his "front."

Appellant's defense to this charge was that L.B. was confused and that his alleged actions never happened. During voir dire, Appellant's counsel discussed with the jury about how little children act differently when something bad happens to them. He asked the jury about different ways children would act when something bad happened to them and elicited answers about children acting withdrawn, staying in their room, or eating less. During his opening statement, Appellant's counsel asserted that no physical evidence supported L.B.'s accusation, that the evidence would show that her behavior never changed, and that she never demonstrated any unusual behavior around Appellant. During his cross-examination of L.B., Appellant's counsel asked her if she knew what pretending was and if her story about Appellant was pretend. She testified that she understood pretending and that her story about Appellant was not pretend.

Near the end of the guilt-innocence phase of trial, the trial court held a hearing outside the presence of the jury on the admissibility of the State's exhibit of approximately 2,000 child pornography images and videos found on Appellant's computers and storage device. The State asserted the evidence was necessary, among other reasons, to show intent and motive and to rebut Appellant's claim that he was only joking with V.B. and did not intend for her to send him a nude picture

6

of himself.  Appellant argued that the prejudicial effect of the evidence outweighed

its probative value.  At the close of the hearing, the trial court stated,

> I have looked at the case law that's been provided by the State. I have heard the voir dire, the opening statement by the Defense. I've heard the tenor of the cross-examination. And I believe that the evidence is probative of the ultimate issues in this case. I think they go toward issues that the jury's going to need to decide. . . .
>
> . . . .
>
> In light of [Appellant]'s . . . denial of being serious about suggesting that [V.B.] provide him with pictures that would be of a pornographic nature, I think that the evidence is relevant, I think it is not unfairly prejudicial.
>
> In balancing the interest of Mr. Cox and the State's need for this evidence, I'm going to err on the side for the State and overrule your objection.

The exhibit was created using HTML pages.  The pages in the exhibit were

grouped according to the device upon which the evidence had been found.  For each

image or video on each page, the page displayed a thumbnail-sized image of the file

or video.  The pages also listed certain information about the files, such as the name

of the file and the size of the file on the computer's hard drive.  In presenting the

evidence to the jury, the State displayed some of the pages containing the thumbnail

images, but did not show all of them.  The record indicates that none of the images

were displayed in their full size and that none of the videos were played.  The

reporter's record shows that the guilt-innocence phase of the trial was 230 pages

7

long and that the discussion of this exhibit spanned 14 of those pages. The exhibit was not provided to the jury during its deliberations.

## Prejudicial Effect of Evidence

In his sole issue on appeal, Appellant argues that the trial court abused its discretion by admitting the 2,000 images and videos of child pornography possessed by Appellant and that the judgment should, therefore, be reversed. Appellant argues the probative value of the pornography possessed by Appellant is outweighed by their prejudicial effect.

### A. Standard of Review

"We review a trial court's ruling under Rule 403 of the Texas Rules of Evidence for an abuse of discretion." *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013) (*Pawlak II*). The trial court's ruling must be upheld as long as it is within the zone of reasonable disagreement. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

### B. Analysis

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Evidence is unfairly prejudicial when it has 'an undue tendency to suggest that a decision be made on an

improper basis.'" *Pawlak II*, 420 S.W.3d at 809 (citing *Mongtomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990)) (internal quotations omitted). "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389.

The factors considered in whether evidence is admissible under Rule 403 "includes, but is not limited to the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Montgomery*, 810 S.W.2d at 389–90). We consider each factor in turn.

### 1.    Probative Value of the Evidence

A Rule 403 balancing test applies only to evidence that is otherwise admissible. *See* TEX. R. EVID. 402 (providing relevant evidence is admissible unless otherwise prohibited); TEX. R. EVID. 403 (permitting exclusion of otherwise relevant evidence—i.e., admissible evidence—if probative value is outweighed by any iterated danger). In order to determine the probative value of the evidence, it is necessary in this case to first determine the basis for the exhibit's admissibility.

The State charged Appellant with attempted solicitation of sexual performance of a child. "A person commits an offense if, knowing the character and content thereof, he . . . induces a child younger than 18 years of age to engage in

9

sexual conduct or a sexual performance." TEX. PENAL CODE ANN. § 43.25(b) (Vernon 2011); *see also* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2011) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."). This includes inducing a child to take a nude photograph of herself. PENAL § 43.25(a)(1)–(3).

The State also charged Appellant with aggravated sexual assault of a child. "A person commits an offense . . . if the person . . . intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2015).

In most instances, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Such "evidence may be admissible for another purpose, such as proving motive . . . [or] intent." TEX. R. EVID. 404(b)(2). A different rule applies for certain sexual offenses related to children, however.

Section 2 of Article 38.37 of the Texas Code of Criminal Procedure has a list of certain sexual offenses related to children. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)–(2) (Vernon Supp. 2015). The section further provides that, "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence," the State may

introduce evidence of an extraneous offense contained within that list in a trial for any other offense also contained within that list "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37, § 2(b). Allegations of possession of child pornography is in the list of offenses. *Id.* art. 38.37, § 2(a)(1)(H). Trials for charges of attempted sexual performance of a child and aggravated sexual assault of a child are also in the list of offenses. *Id.* art. 38.37, § 2(a)(1)(E), (a)(1)(G), (a)(2). Pursuant to section 2 of article 38.37, then, the evidence was admissible "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37, § 2(b).

The legislative history explains the reason for this expansion of the admissibility of evidence of such crimes in prosecution of sexual offenses against children.

> Prosecuting sex crimes committed against children can be difficult due to the physical and emotional trauma suffered by the victims. This can result in long delays in reporting these crimes during which physical evidence can deteriorate or be destroyed. Often the only evidence at a trial may be the testimony of the traumatized child. Children often are targeted for these crimes, in part because they tend to make poor witnesses.

11

House Research Org., Bill Analysis, Tex. S.B. 12, 83d Leg. R.S. (2013); *accord Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

For the charge of attempted sexual performance of a child, Appellant's main defense was that he was only joking when he sent the texts that form the basis of the charge. Appellant's texts to V.B. included "LOL," "hahaha," and "I'm just teasing with you." Intent is an element of the offense. *See* PENAL § 43.25(b) ("A person commits an offense if, *knowing the character and content* thereof, he . . . *induces* a child younger than 18 years of age to engage in sexual conduct or a sexual performance." (Emphasis added.)); *Alexander v. State*, 906 S.W.2d 107, 110 (Tex. App.—Dallas 1995, no pet.) (holding intent is element of attempted sexual performance of a child). Appellant's possession of child pornography constitutes some proof that Appellant intended to solicit more child pornography.

For the charge of aggravated sexual assault, Appellant's main defense was that there was only L.B.'s word that he sexually assaulted her, while L.B. never acted like she had been harmed and never withdrew from Appellant. Appellant's possession of pornography was some proof that he is sexually attracted to prepubescent girls. *See* PENAL § 22.021(a)(1)(B)(i) (establishing offense for intentionally or knowingly penetrating sexual organ of a *child*).

## 2. Potential to Irrationally Impress the Jury

In his brief, Appellant relies heavily on *Pawlak II* to argue we should reverse the trial court's admission of the evidence. *Pawlak II* concerned the admission of child pornography during the guilt-innocence phase of a trial concerning sexual assault of a child. 420 S.W.3d at 808. The defendant had been "charged with five counts of sexual assault of a child, one count of sexual assault, and two counts of attempted sexual assault." *Id.* Five complainants testified at trial. *See Pawlak v. State*, No. 13-10-00535-CR, 2012 WL 3612493, at *1–3 (Tex. App.—Corpus Christi Aug. 23, 2012, pet. granted) (*Pawlak I*). Common themes ran throughout the complaints. All five were teenage boys at the time of the alleged assault. *Id.* All of them accepted drinks by the defendant, either alcoholic or a specific, coconut-flavored drink. *Id.* All of them were drugged, either voluntarily or involuntarily. *Id.* The drugs rendered the boys unable to fend off the defendant's sexual assaults. *See id.*

The defendant presented three character witnesses at trial. *Id.* at *3. One defense witness referenced the allegation that the defendant had been accused of possessing child pornography along with the sexual assault allegations. *Id.* at *4–5. The witness added that he did not believe any of the allegations. *Id.* The State sought to admit the pornographic images because Appellant had opened the door to

the allegations. *Id.* at \*5. The evidence was also used to rebut the defendant's claim that he was not sexually interested in men or boys. *Pawlak II*, 420 S.W.3d at 810.

The evidence consisted of two exhibits. *Id.* One exhibit contained about 900 pornographic images, and the other contained over 9,000 pornographic images. *Id.* The "majority of the images" were classified as gay porn, while "many of the images were child porn images." *Id.* (internal quotations omitted). Two images were published to the jury. *Id.* During deliberations, however, the jury requested all of the evidence and the trial court complied. *Id.*

The Court of Criminal Appeal's analysis was formed by two principles. First, "[w]e have held that sexually related bad acts and misconduct involving children are inherently inflammatory." *Id.* at 809 (citing *Montgomery*, 810 S.W.2d at 397). Second, "[w]e have also held that it is possible for the admission of character evidence, though not necessarily cumulative, to cross the line from prejudicial to unfairly prejudicial based on the sheer volume of character evidence admitted." *Id.* at 809–10 (citing *Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998); *Salazar v. State*, 90 S.W.3d 330, 336 (Tex. Crim. App. 2002)).

The court observed that the charges at trial involved sexual assault and attempted sexual assault but did not involve possession of child pornography. *Id.* at 810. The court acknowledged that the defendant's "possession of male pornographic pictures, including male child pornography" was relevant to rebut the defendant's

14

"claims that he was not interested in men." *Id.* It added, however, "that there was no allegation that Appellant took the pictures [in his possession] or that he in any way participated in coercing children to be involved in producing child pornography, much less that he assaulted them." *Id.* Accordingly, they did not directly support the claims asserted against the defendant. *Id.*

For the State's proof of the charges involved in the suit, the court noted that "the State had five complainants who all testified that [the defendant] had assaulted them" and that the similarities in the complainants' testimony "were striking." *Id.* at 811. In this way, the court distinguished a prior case, which involved a single complainant. *Id.* (citing *Wheeler*, 67 S.W.3d at 889). "Here, the State's need for the extraneous-offense evidence . . . was not as great as in a 'he-said she-said' case with a single victim." *Id.* As a result, the court concluded that "the extraneous-offense evidence was only marginally probative as a possible rebuttal of [the defendant]'s theory that he was not sexually interested in young men." *Id.*

Due to the low probative value of the evidence and the large number of images,

> the sheer volume of extraneous-offense evidence was unfairly prejudicial and invited the jury to convict [the defendant] of sexually assaulting or attempting to sexually assault the victims because [the defendant] possessed 9,900 images that included homosexual child pornography. . . . Even if were to decide that at least some of the extraneous-offense digital images of pornography were admissible, the trial court abused its discretion when it admitted all 9,900 images of

15

pornography without regard to the amount of evidence, kind of evidence, or its source, and over [the defendant]'s Rule 403 objection.

*Id.* The court did not identify at which point the line had been crossed to become unfairly prejudicial. *See id.* ("The facts of this case do not require us to determine the exact point at which the admission of voluminous amounts of extraneous-offense character evidence crosses the threshold to unfairly prejudicial."); *see also Salazar*, 90 S.W.3d at 336 (holding "there is no legal 'bright and easy line' for deciding precisely what evidence is and is not admissible" as character evidence).

Nevertheless, we find no basis to conclude that the court would have drawn the line of admissibility above 2,000 images. While *Pawlak II* concerned the admission of 10,000 pornographic images, only some of those images were actually child pornography. The concern expressed by the court was the "inherently inflammatory" effect of "sexually related bad acts and misconduct involving children," not the more general act of possessing any kind of pornography. *Pawlak II*, 420 S.W.3d at 809. The opinion does not specify the amount of child pornography found in the exhibits. Instead, it states that the majority of the images were not child pornography while "many of the images were child porn images." *Id.* at 810. This further supports the conclusion that the court in *Pawlak II* would still have found an unfairly prejudicial effect if only 2,000 images had been admitted.

Our case concerns the admission of 2,000 files of only child pornography. In addition, some small portion of these files were videos, not just still images. None

of the videos were published to the jury, but the jury was informed that they existed. Based on *Pawlak II*, we must conclude that the exhibit of 2,000 pornographic images and videos had a significant potential to irrationally impress the jury.

Related to this factor, in *Pawlak II*, two images were published to the jury during the trial. *Id.* During its deliberation, however, the jury requested all of the evidence to be given to them, and the trial court complied. *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.25 (Vernon 2006) ("There shall be furnished to the jury upon its request any exhibits admitted as evidence in the case.").

Here, in presenting the evidence to the jury, the State displayed some of the HMTL pages containing the thumbnail images, but did not show all of them. The record indicates that none of the images were displayed in their full size and that none of the videos were played. The exhibit was not provided to the jury during its deliberations.

### 3. Time Needed to Develop the Evidence

The guilt-innocence phase of trial—from opening statements to closing statements—constitutes 230 pages of the reporter's record. Fourteen pages of the record are dedicated to the witness that developed and explained the exhibit in question, constituting six percent of the total length of the reporter's record for guilt-innocence.

17

## 4.    Proponent's Need for the Evidence

In *Pawlak II*, the Court of Criminal Appeals determined that admitted evidence was "marginally probative as a possible rebuttal of Appellant's theory that he was not sexually interested in young men." 420 S.W.3d at 811. Instead, the court held, the strength of the case was the "multiple victims testifying about specific incidents of inappropriate sexual behavior, and the similarities in their stories were striking." *Id.*

We hold the State's need for the evidence in this case was much greater than in *Pawlak II*. The court in *Pawlak II* emphasized the difference between the facts of its case and that of a one-on-one, he-said she-said case. *Id.* The strength of the case in *Pawlak II* was in the five complainants with strikingly consistent stories. *Id.* Accordingly, the State's need to rebut the defendant's claim that he was not sexually interested in men or boys was not strong. *Id.*

Here, the basis for admitting the evidence for the charge concerning L.B. was similar to *Pawlak II*, but the need was much greater. We have held that the relevance of the evidence for the charge concerning L.B. was to present some proof that Appellant is sexually attracted to prepubescent girls, making the likelihood of the assault somewhat greater. *See* Tex. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action.").

While these bases for admission in *Pawlak II* and this case are similar, the needs for them are not. Here, there were two complainants, not five. Additionally, there was very little in common between the stories of the two complainants. In one, Appellant was communicating to a thirteen-year-old girl in a separate location, encouraging her to take an action of her own volition. In the other, Appellant was physically touching a three-year-old girl, forcing her to engage in sexual acts, and physically penetrating and assaulting her.

Moreover, L.B. was five years old at the time of trial. Her testimony was reluctant. Throughout her testimony, she would only respond with motions of her head until prompted to verbally respond. At times, she would respond in the negative to embarrassing questions until the State further developed the testimony in other ways. The very purpose of article 38.37 of the Code of Criminal Procedure was to aid in such circumstances. *See* House Research Org., Bill Analysis, Tex. S.B. 12, 83d Leg. R.S. (2013) (recognizing difficulty of prosecuting sex crimes against children and recognizing that is why children are often targeted).

The State also had a strong need for the evidence in the charge concerning V.B. There was no dispute that Appellant sent the messages concerning her sending him nude pictures of herself. The only dispute was whether Appellant was merely engaging in overly crass humor or whether he actually intended to persuade her to

send the pictures. We have held that Appellant's possession of child pornography constitutes some proof that Appellant intended to solicit more child pornography.

Intent is rarely susceptible to proof by direct evidence. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)). Instead, "[i]ntent is most often proven through the circumstantial evidence surrounding the crime." *Id.* During the closing, the State discussed other evidence that it asserted was relevant regarding Appellant's intent, such as Appellant supplying V.B. with the phone and the home wi-fi password along with Appellant's repeated requests for the images in the messages. But it argued that the strongest evidence of intent was Appellant's possession of child pornography. We agree. Appellant's possession of child pornography demonstrated his interest in obtaining more child pornography in a stronger way than providing V.B. with a phone or wi-fi password or than sending three requests for nude pictures intertwined with suggestions that he was joking.

While we conclude that the State had a larger need for the evidence than in *Pawlak II*, we still must consider whether the sheer volume of the pictures and videos nevertheless outweighed this stronger need for the evidence. *See Pawlak II*, 420 S.W.3d at 809–10 (holding admissible character evidence can still become unfairly prejudicial based on sheer volume of evidence). To resolve this, we recognize that the State bore the burden of proving intent and of proving the elements of aggravated

sexual assault beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp. 2015) (requiring "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt"); *Short v. State*, 874 S.W.2d 666, 667 (Tex. Crim. App. 1994) ("The State alone has the burden of proving beyond a reasonable doubt every essential element of the offense charged."); *Alexander*, 906 S.W.2d at 110 (holding intent is element of attempted sexual performance of a child).

Necessarily, when the State is attempting to present evidence of possession of child pornography in support of proof of an essential element of another offense, the State must be permitted to present sufficient evidence so as to not just come up to a reasonable doubt, but to move *beyond* it. *See* TEX. CODE CRIM. PROC. ANN. art. 38.03. "[S]exually related bad acts and misconduct involving children are inherently inflammatory." *Pawlak II* 420 S.W.3d at 809. But the fact that evidence is inflammatory or prejudicial does not, itself, establish that the evidence is inadmissible. *See id.* at 811 ("However, the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial.").

Whatever amount of evidence is sufficient for the State to prove that possession of child pornography was not an aberration (so that the State could prove that the Appellant intended to attempt to obtain more child pornography) will also

have an inherently inflammatory effect. *See id.* at 809. By the time the State has admitted sufficient evidence to firmly establish that a defendant's possession of child pornography was not an aberration, we have no basis for believing that any subsequent addition of volume of the evidence would have anything more than a minorly incremental effect on the inflammatory nature of the material. Nor do we discern a method by which the State or a trial court could readily discern the margin between inflammatory evidence that is sufficient to carry's the State's burden of proof beyond a reasonable doubt and the same inflammatory evidence that clearly exceeds the burden and has a significantly larger inflammatory effect.

This is what distinguishes the facts of this case from *Pawlak II*. In *Pawlak II*, the need for the pornographic images to rebut an assertion that the defendant was not sexually attracted to men and boys was minor and did not have much bearing on the State's burden of proof. *Id.* at 811. As a result, some smaller amount of evidence could have been admitted that would have mitigated the full inflammatory effect of such a large volume of pornographic images. *See id.* Given the State's need for the evidence in this case, the inflammatory effect of the evidence was unavoidable, and any excess prejudicial effect that may have been added by the volume of evidence was minorly incremental.

### 5. Considerations of the Trial Court

*Pawlak II* relied in part on *Salazar*, a case concerning admission of evidence of the good character of the murder victims during the punishment phase of trial. *See id.* at 809 (citing *Salazar*, 90 S.W.3d at 336). *Salazar* included consideration of a factor we deem relevant here. In *Salazar*, the trial court did not consider the evidence prior to its admission. 90 S.W.3d at 336–37. In that situation, the court acknowledged, "We generally will not 'second guess the trial court's determination' that a tape recording is 'not needlessly cumulative or more prejudicial than probative' precisely because the trial judge has reviewed offered exhibits and explicitly or implicitly balanced probative value against the Rule 403 counterfactors." *Id.* at 337 n.19 (quoting *Webb v. State*, 760 S.W.2d 263, 276 (Tex. Crim. App. 1988)). For that reason, "Trial judges deserve the greatest deference when they have explicitly weighed and balanced these four factors, and articulated their rationale for admitting or excluding the evidence." *Id.* at 337.

Here, after the parties presented their argument to the trial court on the admissibility of the evidence under Rule 403, the trial court recessed to review the matter. Later, the trial court stated on the record that it had considered the matter, acknowledged the prejudicial effect of the evidence, stated the grounds for the State's need for the evidence, and referenced the relevant portions of the trial proceedings that supported those determinations. Ultimately, the trial court held,

23

"In balancing the interest of Mr. Cox and the State's need for this evidence, I'm going to err on the side for the State and overrule your objection."

"In close cases, courts should favor the admission of relevant evidence." *Id.* at 338. The court in *Salazar* reversed the trial court's admission of the evidence because "[n]one of the Rule 403 factors weighs in favor of admissibility." *Id.* Here, while we have determined one factor weighs in favor of exclusion of the evidence (the potential to irrationally impress the jury), we have also determined other factors weigh in favor of its admission (the probative value of the evidence, the State's need for the evidence, and the trial court's considered ruling). Given the probative value of the evidence, the limited emphasis placed on the evidence, the strength of the State's need for the evidence, and the careful thought of the trial court in determining its admissibility, we hold the trial court did not abuse its discretion by admitting the evidence.

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court in all three causes.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

24

Justice Keyes, concurring in the judgment.

Publish. *See* TEX. R. APP. P. 47.2(b).