# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00464-CR

---

**Jose Antonio Nasipak, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 453RD DISTRICT COURT OF HAYS COUNTY
### NO. CR-19-2739-E, THE HONORABLE SHERRI TIBBE, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Jose Antonio Nasipak was charged with thirty counts of possession with intent to promote child pornography. *See* Tex. Penal Code § 43.26. Before trial, the State abandoned two of the counts. At the end of the guilt-innocence phase, the jury found Nasipak guilty of all twenty-eight remaining counts. Nasipak elected to have the trial court assess his punishment, and the trial court sentenced him to twenty years' imprisonment for each count, divided the convictions into four groups with the convictions in each group being served concurrently, and ordered the punishments for the four groups to be served consecutively. *See id.* §§ 12.33, 43.26(g); Tex. Code Crim. Proc. art. 42.08. In two issues on appeal, Nasipak contends that the trial court erred by admitting extraneous-offense evidence. We will affirm the trial court's judgments of conviction.

## BACKGROUND

The National Center for Missing and Exploited Children (the "Center") received a tip from an internet-service provider that two known images of child pornography had been uploaded. Like all digital images, the two images had a unique identifying number called a hash value that could not be altered. After verifying that the flagged material contained child pornography, the Center identified the IP address, name, and email for the individual who allegedly uploaded the images, and the individual associated with the images was Nasipak. The Center forwarded the information to a task force with the Attorney General. After verifying that the images were child pornography, the task force sent the information to the Hays County Sheriff's Office for further investigation.

A Sheriff's Office detective obtained a search warrant to search Nasipak's home. When the search warrant was executed, the investigating officers seized Nasipak's cellphone. While the search warrant was being executed, Nasipak told some of the officers that he would like to talk to them. One of the officers drove Nasipak to the Sheriff's Office, and two detectives interviewed him. The interview was recorded and admitted into evidence at trial. During the interview, Nasipak admitted that he started collecting and sharing child pornography two years before the interview and that he viewed the images and videos on his cellphone. Nasipak stated that the majority of his collected child pornography was stored on his account with Dropbox, which is an online file-storage service. Nasipak sorted the images and videos into folders named as follows: all, preteen 10, little little, young, and sexy. Nasipak told the officers that he "received child pornography from individuals" and "distributed it to" others by using two social-media applications.

Following the interview, the investigating officers searched Nasipak's cellphone and his Dropbox account and found child pornography in both. Nasipak was charged with possessing with intent to promote twenty-eight images or videos of child pornography that were in his Dropbox account. The indictment listed the unique hash value for each image or video.

During the trial, several law-enforcement officers from two law-enforcement agencies testified regarding information that they received from the Center and regarding their investigation in this case. In addition, the recording of Nasipak's interview was admitted into evidence and played for the jury. During a hearing held outside the presence of the jury, the State explained that it was going to go through the images and videos serving as the basis for the indictment but also explained that it wanted to introduce into evidence approximately 150 other images and several videos that were discovered on Nasipak's Dropbox account and on his cellphone. Although the State explained that it wanted to introduce these additional images and videos, it related that it would only publish three items: one redacted image and two videos, including one referred to as video record three. Nasipak objected and argued that the prejudicial value of the evidence outweighed any probative value and that he had not received proper notice, as requested, of the State's intent to introduce the images and videos. After considering the parties' arguments, the trial court overruled Nasipak's objections.

One of the investigating officers testified regarding the contents of Nasipak's cellphone and his Dropbox account and explained that some of the items were child pornography and that others were not technically child pornography but depicted children in sexualized manners. During the officer's testimony, images and portions of ten videos serving as the basis for the counts in the indictment were published for the jury. Next, the officer discussed how the investigating officers discovered other images and videos of child pornography on Nasipak's

3

Dropbox account and cell phone and also discovered images and videos that did not contain child pornography but did depict children in sexualized manners. The officer explained that the images and videos are on exhibits that were admitted into evidence. During the officer's testimony, the State published a redacted image in which a penis penetrated a child and published two videos containing child pornography, including video record three. The officer described video record three as an aggressive sexual assault of "a young female" and described the other video as showing "an erect penis . . . sexually assaulting orally a four-year-old child."

Nasipak did not testify or call any witnesses. After considering the evidence presented, the jury found Nasipak guilty of all twenty-eight counts of possession with intent to promote child pornography. Following the punishment phase, the trial court rendered its judgments of convictions. Nasipak appeals the trial court's judgments of conviction.

## STANDARD OF REVIEW

On appeal, Nasipak challenges evidentiary rulings by the trial court. Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

4

## DISCUSSION

In his two issues on appeal, Nasipak contends that the trial court erred by overruling his Rule 403 and Rule 404 objections and admitting into evidence video record three, which he describes as "much worse than any other evidence admitted." *See* Tex. R. Evid. 403, 404. However, during trial, Nasipak objected to the admission of all of the images and videos of child pornography that were not listed in the indictment, and the trial court ruled on the admissibility of all of that evidence together without making any specific ruling regarding video record three. In addressing Nasipak's issues, we will address the arguments as they pertain to the admission of all of the evidence but will address video record three separately where appropriate. *Cf. Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (noting that "[t]he point of error on appeal must comport with the objection made at trial").

### Rule 403

Regarding Rule 403, Nasipak contends in his first issue that the State did not need video record three and that the video had "little, if any, probative value" because the trial court allowed the State to introduce between 100 and 150 images and videos not listed in the indictment to show his intent to promote child pornography. Additionally, Nasipak argues that video record three was much worse than any of the images and videos listed in the indictment because it is a recording of a violent sexual assault of a young girl and could do "nothing but inflame the jury," and he points to a comment by the trial court stating that Nasipak had made a good argument regarding the prejudicial value of the video because "[i]t's just really bad" and "so horrific that it's just going to horrify" the jury. Similarly, Nasipak asserts that because the video depicting the violent sexual assault was played in an unredacted form, it had the potential to cause the jury to make its decision on an improper emotional basis. Relatedly, Nasipak urges

5

that video record three was different from the other videos and images shown to the jury and notes that the trial court commented that none of the other videos had the "exact kind" of content present on video record three. Accordingly, Nasipak asserts that the jury could have given additional weight to that video and been confused from the main issue. For these reasons, Nasipak contends that the trial court erred by denying his Rule 403 objection and that the admission harmed him by affecting his substantial rights.

Rule of Evidence 403 specifies that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted).

Although this is not an exhaustive list, courts generally balance the following factors when performing a Rule 403 analysis: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see Gigliobianco v.*

6

*State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In this context, "probative value" refers to how strongly evidence makes the existence of a "fact of consequence" "more or less probable" and to how much the proponent needs the evidence, and "unfair prejudice" refers to how likely it is that the evidence might result in a decision made on an "improper basis," including "an emotional one." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). For Nasipak to be convicted of the charged offenses, the evidence had to show that he "knowingly or intentionally promote[d] or possesse[d] with intent to promote" "visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct" and that he knew "that the material depicts the child as described." Tex. Penal Code § 43.26(a), (e). In this context, "'[p]romote' means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above." *Id.* § 43.25(a)(5).[1] Making child pornography available for others to access and download through peer-to-peer file-sharing software qualifies as "dissemination" or "distribution" of child pornography. *See Wenger v. State*, 292 S.W.3d 191, 198-99 (Tex. App.—Fort Worth 2009, no pet.).

*Probative Value*

During the hearing addressing the admissibility of the evidence of videos and images from Nasipak's Dropbox account and cellphone, the State explained that it intended to

---

[1] In its brief, the State suggests that Nasipak has waived this issue by failing to object to testimony and other evidence covering topics that the State asserts are similar to the contents of video record three. However, we note that Nasipak asked for and obtained a running objection to the admission of all of the evidence from his Dropbox account and cellphone. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (explaining that party does not have to continue to object each time inadmissible evidence is offered if party obtains running objection).

7

show the jury the twenty-eight images and videos serving as the basis for the indictment, and the State further explained that it wanted to introduce evidence regarding other images and videos, including video record three, that were also in his Dropbox account and cellphone. Further, the State noted that Nasipak suggested during the hearing that some of the images listed in the indictment might not depict children, and the State argued that the additional child-pornography files help to establish that the images and videos listed in the indictment depicted children and that Nasipak knew that they were children. Next, the State explained that proving Nasipak's guilt required the State to show that Nasipak possessed the images and videos listed in the indictment with the intent to promote them and that the evidence regarding additional images and videos helped to establish the promotion element because possession of an even larger collection of child pornography circumstantially indicated that he intended to promote the files listed in the indictment.

Accordingly, the trial court could have reasonably concluded that the other images and videos, including video record three, had probative value and could help establish Nasipak's guilt. *See Gerron v. State*, 524 S.W.3d 308, 321 (Tex. App.—Waco 2016, pet. ref'd) (explaining that "the discovery of the approximately 11,000 photographs of children" had significant probative force where "defensive theor[y] was the lack of proof of the very issue these items tended to prove, that being that the girls depicted in the photographs for which he was indicted were under the age of 18"); *Cox v. State*, 495 S.W.3d 898, 902, 904 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (determining that defendant's possession of "2,000 images and videos" of "child pornography constitutes some proof that [he] intended to solicit more child pornography"); *see also Leita v. State*, No. 13-14-00567-CR, 2016 WL 6541843, at *8 (Tex. App.—Corpus Christi-Edinburg Aug. 25, 2016, pet. ref'd) (mem. op., not designated for

8

publication) (explaining that evidence of defendant's possession of large amount of child pornography "made more probable [defendant]'s knowledge that the files on his computer were being shared, which is a fact of consequence").

*Need for the Evidence*

Before the hearing, a recording of Nasipak's interview with the police was played for the jury. On the recording, Nasipak admitted that he possessed child pornography on his cellphone and in his Dropbox account, and he also admitted that he exchanged child pornography through two social-media applications. However, Nasipak made no specific admission regarding the images and videos listed in the indictment, and the State explained during the hearing that it had no direct evidence that Nasipak intended to promote the twenty-eight images and videos serving as a basis for the indictment and asserted that it needed the evidence regarding other child pornography also found in Nasipak's Dropbox account and cellphone, including video record three, to help establish his intent to promote. Moreover, as set out above, Nasipak argued that it was not clear that some of the images and videos alleged in the indictment displayed a child, and the State argued that it needed the evidence of other images and videos to help establish that the images and videos listed in the indictment displayed children and that Nasipak knew they were children.[2]

For these reasons, the trial court could have reasonably determined that the State's need for this evidence weighed in favor of admission of the evidence of additional child pornography, including video record three. *Cf. Petruccelli v. State*, 174 S.W.3d 761, 766 (Tex.

---

[2] Although Nasipak asserts on appeal that the State did not need video record three because it was allowed to introduce other images and videos not listed in the indictment, he objected at trial to the admission of all of the images and videos not listed in the indictment, and accordingly, the trial court ruled on the admissibility of all of the evidence together.

9

App.—Waco 2005, pet. ref'd) (determining that State's need for photographs was clear where they were "directly relevant and probative to counter the defense's theory"); *see also Leita*, 2016 WL 6541843, at *8 (determining that "the State's need for . . . evidence was strong" where there was no "direct evidence of [the defendant] promoting child pornography").

*Time Needed to Develop the Evidence*

During the hearing, the State explained that it would focus its presentation on the images and videos forming the basis for the indictment and would not take an inordinate amount of time to go through the other images and recordings. Further, although the State requested the admission of several images and videos, it explained that it would publish only one image and two videos. Moreover, we note that the guilt-innocence portion of the trial was held over three days, that the record is hundreds of pages in length, and that the State played portions of ten videos listed in the indictment. In contrast, the testimony concerning the other images and videos discovered during the investigation was less than fifteen pages, and the testimony regarding video record three was just a few pages in length. Moreover, as it indicated it would, the State published only one additional image and two additional videos. The first video was only published for thirty-nine seconds. Video record three was played in its entirety, but the recording was less than a minute long.

Accordingly, the trial court could have reasonably determined that the time needed to develop the other evidence, including video record three, heavily weighed in favor of admission. *See Brickley v. State*, 623 S.W.3d 68, 82 (Tex. App.—Austin 2021, pet. ref'd) (determining that time factor weighed in favor of admission where guilt-innocence phase was held over three days, where record was hundreds of pages long, and where testimony regarding extraneous offense was fewer than five pages); *Robisheaux v. State*, 483 S.W.3d 205, 221 (Tex.

10

App.—Austin 2016, pet. ref'd) (finding time factor weighed in favor of admission where evidence regarding extraneous offense came in though one witness, where guilt-innocence phase lasted three days, and where testimony about extraneous offense "was only eight pages long").

*Potential to Influence Jury*

Unquestionably, the other images and videos and particularly video record three were inflammatory. *See Pawlak*, 420 S.W.3d at 809 (explaining that "[e]vidence showing sexual misconduct involving children is inherently inflammatory"). The trial court described video record three as "really bad" and "horrific," and the recording shows an aggressive sexual assault of a young child. However, the State explained during the hearing that the jury would see the images and videos of child pornography forming the basis for the indictment before seeing the other images and videos and that its case would focus on the images and videos serving as the basis for the indictment. Moreover, in order to minimize the amount of prejudice, the trial court instructed the State to mute video record three and the other video when they were played and agreed to provide a limiting instruction before the evidence was played and to include another one in the jury charge. *See Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the impermissible inference can be minimized through a limiting instruction"); *see also Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (noting that courts presume that jury followed instructions absent evidence indicating otherwise). Similarly, the only image not listed in the indictment that was published to the jury was published in a redacted form. Further, the additional images and videos did not address a complex subject matter that might distract the jury from determining whether Nasipak was guilty of the charged offenses. *See Brickley*, 623 S.W.3d at 82; *see also Gigliobianco*, 210 S.W.3d

11

at 641 (explaining that scientific evidence is type of evidence that might mislead jury not properly equipped to consider probative value).

In light of the preceding, the trial court could have reasonably determined that the evidence of other images and videos, including video record three, would not impress the jury in an irrational manner or, at least, that the potential was sufficiently minimized to warrant admission given the probative value of the evidence, the State's need for it, and the minimum time needed to develop it. *See Brickley*, 623 S.W.3d at 82.

For these reasons, we conclude that the trial court did not abuse its discretion by overruling Nasipak's Rule 403 objection and admitting the other images and videos, including video record three, into evidence and, therefore, overrule Nasipak's first issue on appeal. *See Cox*, 495 S.W.3d at 903-09 (concluding that trial court did not abuse its discretion by admitting thousands of images of child pornography where potential to impress jury in irrational way weighed in favor of exclusion but other factors weighed in favor of admission); *see also Leita*, 2016 WL 6541843, at *7-9 (determining that trial court did not abuse its discretion by admitting 50 extrinsic videos and 87 extrinsic images of child pornography in promotion-of-child-pornography case where factors weighed in favor of admission).

**Rule 404**

In his second issue on appeal, Nasipak contends that the trial court erred by overruling his Rule 404 objection. Although Nasipak acknowledges that Rule 404 allows for the admission of evidence of extraneous offenses, he notes that the State did not provide reasonable notice of its intent to introduce the evidence as required by Rule 404. *See* Tex. R. Evid. 404. Further, Nasipak notes that the State argued during the hearing that Rule 404 does not require notice when the evidence pertains to an extraneous offense arising in the same transaction as the

12

charged offense, but Nasipak contends that video record three is not same-transaction contextual evidence because it is not so connected with the State's proof for the charged offenses that avoiding reference to the video would render the State's case incomplete. More specifically, Nasipak argues that video record three was not so connected with the charged offenses "as to form an indivisible criminal transaction and was not needed to complete the State's case or make it understandable to the jury." To the contrary, Nasipak urges that video record three "was more apt to have confused the jury's perception of the offenses alleged" due to its violent nature.

Rule 404 provides that extraneous-offense evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* If a defendant makes a timely request, the State "must provide reasonable notice before trial that [it] intends to introduce such evidence" unless the extraneous-offense evidence "aris[es] in the same transaction" as the charged offense. *Id.*

"Rule 404(b) . . . is a rule of inclusion rather than exclusion," *Chaparro v. State*, 505 S.W.3d 111, 115-16 (Tex. App.—Amarillo 2016, no pet.), and the "enumerated exceptions" listed under Rule 404(b) "are neither mutually exclusive nor collectively exhaustive," *Torres v. State*, 543 S.W.3d 404, 420 (Tex. App.—El Paso 2018, pet. ref'd). Also, "extraneous offense evidence may be admissible as contextual evidence." *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). There are two forms of contextual evidence: "(1) 'same transaction contextual evidence,' which refers to other offenses connected with the primary offense; and (2) 'background contextual evidence' which includes all other general background evidence." *Blakeney v. State*, 911 S.W.2d 508, 514 (Tex. App.—Austin 1995, no

pet.) (internal footnote omitted) (quoting *Mayes v. State*, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991), *superseded on other grounds by* Tex. Code Crim. Proc. art. 38.37).

"[S]ame transaction contextual evidence may be admissible where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others.'" *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). "[S]ame-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). "[T]he jury is entitled to know all the relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). "It is well settled that where one offense or transaction is one continuous episode, or another offense or transaction is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper." *Mitchell v. State*, 650 S.W.2d 801, 811 (Tex. Crim. App. 1983).

In *Wilson v. State*, our sister court of appeals was confronted with a similar issue to the one presented here. 419 S.W.3d 582 (Tex. App.—San Antonio 2013, no pet.). In that case, the defendant was charged with ten counts of possessing child pornography in his computer. *Id.* at 583, 584-85. During the trial, the trial court allowed the State to introduce additional images of child pornography found on his computer beyond those specified in the indictment and that were also found under his profile on the computer. *Id.* at 593. The defendant argued that the trial court erred by admitting the additional images, but our sister court reasoned that the admission was proper because "the additional photographs at issue were same transaction contextual evidence." *Id.* at 593-94.

14

We believe that a similar conclusion is warranted under the facts of this case. Before the hearing, one of the investigating officers explained that Nasipak generally related the process by which he would obtain and promote the child pornography in his possession by admitting during his interview that he used his cellphone to view and obtain child pornography, that he would store the child pornography on his cellphone and Dropbox account, and that he used two social media applications to share the images and videos with others. Nasipak's recorded interview with the police contained similar information. Although Nasipak generally admitted to possessing a large quantity of child pornography, he did not make admissions regarding the twenty-eight images and videos forming the basis for the indictment. Moreover, Nasipak admitted in the interview that he organized his collection of child pornography into files on his Dropbox account. The investigating officer explained that during her review of the contents of Nasipak's cellphone and Dropbox account, she saw images and videos showing child pornography. Another officer involved in the case testified that his department received a report regarding the uploading of known images of child pornography that were associated with Nasipak.

Based on this testimony and other evidence, the trial court could have reasonably concluded that the images and videos of child pornography on Nasipak's Dropbox account that served as the basis for the indictment were so intermixed with the other child pornography on his cellphone and Dropbox account, including video record three, as to form an indivisible criminal transaction. *See Wyatt*, 23 S.W.3d at 25. Although the evidence may not have been "absolutely necessary to the jury's understanding of the charged offense," it is not readily "divisible in the way that evidence involving" different victims can be. *See Worthy v. State*, 312 S.W.3d 34, 40 (Tex. Crim. App. 2010). Accordingly, we conclude that the trial court did not abuse its

15

discretion by concluding that the other images and videos, including video record three, were same-transaction contextual evidence and that the notice provision of Rule 404 did not apply and by overruling Nasipak's Rule 404 objection. *See Wilson*, 419 S.W.3d at 593-94.

For these reasons, we overrule Nasipak's second issue on appeal.

## CONCLUSION

Having overruled Nasipak's two issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: November 18, 2022

Do Not Publish

16