Harvey Brown, Justice
Keith William Lamerand was convicted of aggravated sexual assault of a child and sentenced to 30 years' confinement.[1] In five issues, Keith contends that the trial *255 court abused its discretion in (1) admitting medical records that contained the complainant's hearsay statement identifying Keith as her assailant, (2) admitting outcry testimony from the complainant's school counselor, (3) admitting outcry testimony from a detective who interviewed the complainant, (4) admitting evidence that Keith attempted suicide after his initial interview with the police, and (5) denying Keith a recess when he received late notice of the State's intent to present evidence of his attempted suicide. We affirm.
Background
In 2013, the then-ten-year-old complainant, pseudonymously referred to as Kathryn, spent the summer with her grandmother, Lori Lamerand, and step-grandfather, Keith Lamerand. Later that November, after Kathryn had returned home and started school, she wrote a note to her teacher that said, "My papa has been touching me and I did not tell my parents."
Kathryn's teacher sent Kathryn to meet with the school counselor, Samantha Clark.[2] Ms. Clark testified that, during the meeting, Kathryn showed her the note and told her that her grandfather had touched her in "bad spots." Kathryn "indicated that bad spots were where she went to the bathroom." Kathryn said that her grandfather tried "to put his fingers under [her] panties" and then "kind of drifted off and didn't say anything more." "She also said that one time she tried to roll away from him, ... and he got her bottom instead." According to Ms. Clark, Kathryn appeared "scared" and "timid" and cried when she told her what had happened. Ms. Clark reported the incident to the authorities, and the case was assigned to Detective M. Wiers.
A few days later, Detective Wiers met with Kathryn at school. During the meeting, Kathryn spoke with Detective Wiers in detail about the alleged abuse. She told him that, over the summer, in the mornings before Keith left for work, he would come into the room where she was sleeping and "touch her all over," from her chest down to her knees. She said that on multiple occasions, Keith "would slide her underwear to the side, place his hand on her vagina and rub and then insert his finger."
After the meeting, Wiers contacted Kathryn's mother, Macie Brown.[3] Detective Wiers informed Macie of Kathryn's allegations and requested that she take Kathryn to a pediatrician for a sexual assault exam. Detective Wiers then transferred the case to Sgt. V. Coleman of the Harris County Sheriff's Office.
That December, Sgt. Coleman contacted Keith and Lori, informed them of the allegations, and scheduled an interview. During the interview, Keith denied touching Kathryn inappropriately and explained that in the mornings he would come into her room and reposition her while she slept. At the end of the interview, Keith agreed to meet Sgt. Coleman again in late January. But before their scheduled second meeting, Keith attempted to take his own life by shooting himself in the mouth. Keith spent several months in the hospital, where he underwent multiple surgeries. Keith survived, but the gunshot wound left him severely disfigured.
After Keith was discharged from the hospital, Sgt. Coleman met with him for a second time. During their second meeting, Keith told Sgt. Coleman that he had tried *256 to kill himself "because he didn't want his family to be in pain."
As the police continued their investigation, Keith and Lori's niece accused Keith of fondling her breasts when she stayed a week with them in 2002, when she was eleven years old. The police also discovered that in 1988, while Keith was serving in the Navy, he was court-martialed for inappropriately touching his then-six-year-old daughter. Keith pleaded guilty to indecency with a child and was sentenced to a short period of confinement, demoted, and then discharged from the Navy.
Keith was indicted for continuous sexual abuse of a child.[4] The jury found Keith guilty of a lesser-included offense, aggravated sexual assault of a child, and assessed punishment at 30 years' confinement. The trial court sentenced Keith in accordance with the jury's verdict. Keith appeals.
Admission of Medical Records
In his first issue, Keith contends that the trial court abused its discretion in admitting medical records that contained Kathryn's hearsay statement identifying Keith as her assailant. During trial, the State offered into evidence a report prepared by the pediatrician who performed Kathryn's sexual-assault examination, Dr. Cynthia Smith. The report contained Kathryn's statement that her "grandpa" gave her "bad touches." Keith objected that the statement was hearsay. The State responded that the statement was admissible because it was made for medical diagnosis or treatment. See TEX. R. EVID. 803(4). The trial court overruled Keith's objection and admitted the report. Keith argues that the trial court's ruling was an abuse of discretion because the report contained hearsay that did not fall under the exception for medical diagnosis or treatment. He concedes that certain information reasonably pertinent to diagnosis and treatment was admissible but contends that Kathryn's statement identifying him as her assailant was not.[5]
Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. See TEX. R. EVID. 801(d). It is inadmissible unless a statute or rule provides otherwise. TEX. R. EVID. 802. The erroneous admission of hearsay does not *257 constitute reversible error "if other evidence proving the same fact is properly admitted elsewhere." Infante v. State , 404 S.W.3d 656, 663 (Tex. App.-Houston [1st Dist.] 2012, no pet.) (quoting Land v. State , 291 S.W.3d 23, 28 (Tex. App.-Texarkana 2009, pet. ref'd) ) (brackets omitted); see Josey v. State , 97 S.W.3d 687, 698 (Tex. App.-Texarkana 2003, no pet.) ("If the same or similar evidence is admitted without objection at another point during the trial, improper admission of the evidence will not constitute reversible error.").
Assuming without deciding that the medical report contained inadmissible hearsay and that Keith preserved the error,[6] any error in admitting the report was harmless because the State offered other evidence that Kathryn told Dr. Smith that Keith was her assailant. Specifically, Dr. Smith testified without objection that Kathryn told her that "her grandpa gave her bad touches." Because the same fact was established with other evidence admitted without objection, we hold that any error in admitting Dr. Smith's report was harmless. See Brooks v. State , 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that any error in admitting evidence that declarant told witness that victim was being "jacked" under exception to hearsay rule was harmless in light of other properly admitted evidence proving same fact).
Additionally, Kathryn herself testified in detail about the abuse, specifically identifying Keith as the man who assaulted her. See Taylor v. State , 268 S.W.3d 571, 593 (Tex. Crim. App. 2008) (holding that error in admitting child's statement to counselor identifying defendant as assailant was harmless when child repeatedly told her version of events to other witnesses and jury); Perez v. State , No. 14-11-01102-CR, 2013 WL 655714, at *6 (Tex. App.-Houston [14th Dist.] Feb. 21, 2013, no pet.) (mem. op., not designated for publication) (holding that erroneous admission of complainant's medical records was harmless when same facts were "established by the complainant's own testimony and the testimony of the deputy constable who took her statement and observed her injuries"). Thus, any error in the admitting the unredacted medical report was harmless. We overrule Keith's first issue.
Admission of Outcry Testimony
In his second and third issues, Keith contends that the trial court abused its discretion in admitting outcry testimony from Ms. Clark and Detective Wiers. During trial, Keith objected to Ms. Clark and Detective Wiers testifying to any hearsay statements made by Kathryn. The State responded that Kathryn's hearsay statements to Ms. Clark and Detective Wiers were admissible outcries under Article 38.072 of the Code of the Criminal Procedure. The trial court held a hearing outside the presence of the jury, determined that the statements were admissible, and overruled Keith's objections.
A. Applicable law and standard of review
Hearsay is generally inadmissible. See TEX. R. EVID. 802. Article 38.072 creates an exception for certain outcry statements made by children who are the victims of sexual assault. TEX. CODE CRIM. PROC. art. 38.072, §§ 1(1), 2.
*258 To be admissible in the guilt-innocence phase of a trial, the statement must describe the alleged offense and be made by the child against whom the act was committed. Id. § 2(a)(1)(A), (a)(2). The witness testifying about the outcry must be the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. Id. § 2(a)(3). And the trial court must find in a hearing conducted outside the presence of the jury that the statement is reliable based on the time, content, and circumstances of the statement. Id. § 2(b)(2).[7] Courts have identified eleven factors to consider in determining the statement's reliability:
(1) whether the victim testifies at the trial and admits making the out-of-court statement; (2) whether the child is of a level of maturity to understand the need to tell the truth and to have the ability to observe, recollect, and narrate; (3) whether the child's out-of-court statement is corroborated by other evidence; (4) whether the child's out-of-court statement was spontaneously made in the child's own terminology or whether there is evidence of prior prompting or manipulation by adults; (5) whether the child's out-of-court statement is clear and unambiguous and rises to the needed level of certainty; (6) whether the statement is consistent; (7) whether the statement describes an event that a child of his or her age could not be expected to fabricate; (8) whether there is abnormal behavior by the child after the contact; (9) whether there is a motive for the child to fabricate the out-of-court statement; (10) whether the statement is against the interest of the child, e.g., the child expects punishment because of reporting the conduct; and (11) whether there was an opportunity under the evidence for the alleged act to have been committed by the defendant.
Walker v. State , 461 S.W.3d 599, 609-10 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (quoting Buckley v. State , 758 S.W.2d 339, 343-44 (Tex. App.-Texarkana 1988), aff'd , 786 S.W.2d 357, 361 (Tex. Crim. App. 1990) ). We review a trial court's admission of outcry testimony under Article 38.072 for an abuse of discretion. Walker , 461 S.W.3d at 609.
B. The admission of Ms. Clark's outcry testimony was proper
Keith argues that the trial court abused its discretion in admitting Ms. Clark's outcry testimony because Kathryn's outcry to Ms. Clark was not reliable. We disagree.
Kathryn's outcry to Ms. Clark was supported by numerous indicia of reliability, including the testimony of Kathryn herself, who discussed Keith's abuse in detail and admitted making the statement to Ms. Clark. Id. (indicia of reliability include complainant testifying at trial and admitting to making statements). Dr. Smith testified that Kathryn was able to differentiate between telling the truth and lying and was aware of the importance of telling the truth during her medical examination. Id. at 609 (indicia of reliability include evidence that child is mature enough to understand need to tell truth).
Kathryn described the abuse in her own terminology, stating that her grandfather touched her in "bad spots." Id. (indicia of reliability include evidence that outcry was spontaneously made in child's own terminology without prompting or manipulation by adults). Kathryn's statement was relatively *259 clear, as she "indicated that bad spots were where she went to the bathroom." Id. at 609-10 (indicia of reliability include statement that is clear and unambiguous). And although Kathryn eventually provided additional detail, she never contradicted herself. Id. at 610 (consistency indicates reliability).
There is no evidence that Kathryn had any motive to fabricate her allegations against Keith. Id. at 610 (lack of motive for child to fabricate outcry indicates statement is reliable). And there is no evidence that an adult prompted her to make the statement. Id. at 609 (indicia of reliability include evidence that outcry was made without prompting or manipulation by adults).
Kathryn testified that she waited several months to tell someone about the abuse because she feared she would be called a liar or otherwise get in trouble. Id. at 610 (indicia of reliability include evidence that child believes making outcry is against her own interest, e.g., child expects punishment for reporting abuse). And according to Macie, when Kathryn returned home at the end of the summer, she seemed distant and sad, which was unusual for her. Id. (indicia of reliability include evidence of abnormal behavior after abuse). Finally, it is undisputed that Kathryn stayed with Keith and Lori for at least six weeks, affording Keith the opportunity to commit the offense as alleged. Id. (indicia of reliability include evidence that defendant had opportunity to commit offense).
We hold that the trial court did not abuse its discretion in admitting Ms. Clark's outcry testimony under Article 38.072. We overrule Keith's second issue.
C. The admission of Detective Wiers's outcry testimony was harmless
Keith argues that the trial court abused its discretion in admitting Detective Wiers's outcry testimony because Detective Wiers was not the first person to whom Kathryn made a statement about the abuse-Kathryn's counselor was. Assuming without deciding that the trial court erred in admitting Detective Wiers's outcry testimony, we must determine whether the error was harmful.
The improper admission of inadmissible hearsay under Article 38.072 is non-constitutional error; we will consider it harmless if the same or similar evidence is admitted without objection at another point in the trial. See Duncan v. State , 95 S.W.3d 669, 672 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) ("Any error in admitting evidence is cured where the same evidence comes in elsewhere without objection."); Zarco v. State , 210 S.W.3d 816, 833 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ("[W]hen a court admits evidence over an objection, even if error, it is not reversible when the same evidence is subsequently admitted without objection.").
Kathryn testified in detail about the abuse. Kathryn testified that, during her stay, she slept on a recliner in the downstairs game room. She testified that, around the second or third week, Keith began coming into the room in the early morning on his way out for work and touching her "everywhere." Kathryn explained that Keith would kneel beside her, put his arms around her, hug her, kiss her, bring his hand into her underwear, and place a finger inside of her vagina. Kathryn said that this occurred two-to-three times a week for the remainder of her stay.
Kathryn testified that Keith's touching made her "uncomfortable" and "didn't feel right at all." She described how one time she tried to pull away but that Keith grabbed her buttocks and pulled her back. She said that she wanted to tell him to *260 stop but was unable to speak and was afraid to tell anyone else about what was happening.
Kathryn's testimony and Detective Wiers's outcry testimony both established that Keith sexually abused Kathryn by digitally penetrating her vagina multiple times over the course of the summer. Because the same evidence was admitted without objection at other points during the trial, we conclude that any error in admitting Detective Wiers's outcry testimony was harmless. See Duncan , 95 S.W.3d at 672 (holding that admission of outcry witness's testimony was harmless when several instances of similar testimony were developed and offered without objection, including testimony of complainant, who testified in detail about abuse); Zarco , 210 S.W.3d at 833 (holding that admission of detective's outcry testimony was harmless when child "testified in detail about the abuse" and "detailed the same testimony" as detective). We overrule Keith's third issue.
Admission of Evidence of Attempted Suicide
In his fourth issue, Keith contends that the trial court abused its discretion in admitting evidence that Keith attempted suicide after his initial interview with Sgt. Coleman. Keith argues that evidence was inadmissible because (1) it was not relevant and (2) even if it was relevant, its probative value was substantially outweighed by the danger of unfair prejudice.
A. Applicable law and standard of review
Evidence is relevant if it has any tendency to make a fact that is of consequence in determining the action more or less probable than it would otherwise be. TEX. R. EVID. 401. Relevant evidence is generally admissible. See TEX. R. EVID. 402. However, a trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. TEX. R. EVID. 403.
"Probative value" refers to the inherent probative force of an item of evidence-that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation-coupled with the proponent's need for that item of evidence. Gigliobianco v. State , 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" refers to a tendency to suggest decision on an improper basis-commonly, though not necessarily, an emotional one. Id.
In determining whether probative value of evidence is substantially outweighed by the danger of unfair prejudice, we consider "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." Hernandez v. State , 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) ; Cox v. State , 495 S.W.3d 898, 903 (Tex. App.-Houston [1st Dist.] 2016, pet. ref'd). " Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." Cox , 495 S.W.3d at 903 (quoting Montgomery v. State , 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) ).
We review a trial court's ruling under Rule 403 of the Texas Rules of Evidence for an abuse of discretion. Cox , 495 S.W.3d at 902. The trial court's ruling must be upheld as long as it is within the zone of reasonable disagreement. Id. at 903.
B. The evidence of Keith's attempted suicide was relevant
Keith argues that evidence of his attempted suicide was not relevant because *261 he left a suicide note in which he maintained his innocence.[8] We disagree.
Evidence that a defendant attempted suicide after the offense is relevant to show the defendant's consciousness of guilt. See Johnson v. State , 208 S.W.3d 478, 500 (Tex. App.-Austin 2006, pet. ref'd) (holding that evidence that defendant was upset by rumors that she was involved in complainant's death and said "she wanted to kill herself" was relevant to show defendant's consciousness of guilt); see also Johnson v. State , No. 01-11-00820-CR, 2013 WL 4680360, at *6 (Tex. App.-Houston [1st Dist.] Aug. 29, 2013, pet. struck) (mem. op., not designated for publication) (holding that defendant's statements that "he wanted to commit suicide" and that "the arresting office should shoot him" were admissible to show defendant's consciousness of guilt); Alonzo v. State , No. 01-07-00506-CR, 2008 WL 2611887, at *6 (Tex. App.-Houston [1st Dist.] July 3, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that jury was entitled to infer consciousness of guilt from murder-defendant's statements that "he wished to die himself"). And evidence of a consciousness of guilt, in turn, is relevant to show that the defendant committed the offense. Ross v. State , 154 S.W.3d 804, 812 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd).
Keith attempted suicide shortly after learning that he had been accused of sexually assaulting Kathryn and that the police were investigating him. Given the timing, a jury could have reasonably inferred that Keith's suicide attempt evidenced a consciousness of guilt, notwithstanding the note in which he maintained his innocence. See Johnson , 208 S.W.3d at 500 ; Lim v. State , No. 02-14-00365-CR, 2015 WL 5770620, at *3-4 (Tex. App.-Fort Worth Oct. 1, 2015, no pet.) (mem. op., not designated for publication) (holding that jury could have inferred that defendant's suicide attempt was attempt to avoid prosecution and showed consciousness of guilt even though defendant "professed his innocence").[9] Thus, the evidence was relevant.
C. The danger of unfair prejudice did not substantially outweigh the evidence's probative value
Keith next argues that the evidence of his attempted suicide was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice. To determine whether the evidence's probative value was substantially outweighed by the danger of unfair prejudice, we must conduct a Rule 403 analysis. Hernandez , 390 S.W.3d at 324 ; Cox , 495 S.W.3d at 903.
1. The evidence's probative value
As noted above, from the evidence that Keith attempted suicide after his initial interview with Sgt. Coleman, the jury *262 could have reasonably inferred that Keith had a consciousness of guilt. See Johnson , 208 S.W.3d at 500 ; Ross , 154 S.W.3d at 812. Thus, the probative value of Keith's attempted suicide weighs in favor of admissibility.
2. The evidence's potential to impress the jury in some irrational yet indelible way
Although the evidence of the suicide attempt likely carried some emotional weight, Keith provides no reason to conclude that the evidence impressed the jury in some irrational yet indelible way or otherwise influenced the jury to decide the case on an improper basis. Because the evidence would not irrationally influence the jury, this factor weighs in favor of admissibility.
3. The time needed to develop the evidence
The State developed the evidence through the testimony of Sgt. Coleman, who testified about how she interviewed Keith both before and after his suicide attempt. Sgt. Coleman's testimony on this issue takes up three pages of the over-850-page record. The time needed to develop the evidence weighs in favor of admissibility.
4. The State's need for the evidence
Even without the evidence of Keith's attempted suicide, the State presented sufficient evidence to convict Keith, including the testimony of Kathryn, which was clear and detailed, as well as the testimony of Keith's niece, daughter, and ex-wife, which established that Keith had inappropriately touched young girls in the past. But the State did not present any physical evidence, and Keith put forth a viable defense through his wife (Kathryn's grandmother) Lori, who testified that Keith could not have touched Kathryn in the mornings before he left for work because she was also downstairs at that time and therefore would have noticed. The State's need for the evidence weighs neither for nor against admissibility.
At least three of the four factors weigh in favor of admissibility, and none weigh against. We hold that the trial court did not abuse its discretion in ruling that the probative value of Keith's suicide attempt was not substantially outweighed by the danger of unfair prejudice. Therefore, we overrule Keith's fourth issue.
Notice of Intent to Use Evidence of Extraneous Bad Act
In his fifth issue, Keith contends that the trial court abused its discretion in denying him a recess when he received late notice of the State's intent to present evidence of his attempted suicide. Keith contends that his attempted suicide was an extraneous act under Rule 404(b) and that the State was therefore required to provide him with reasonable notice that it intended to introduce the evidence during its case-in-chief. See TEX. R. EVID. 404(b)(2) ("On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence-other than that arising in the same transaction-in its case-in-chief.").
Assuming that the State was required but failed to provide reasonable notice of its intent to introduce evidence of Keith's attempted suicide during its case-in-chief, we hold that the failure did not harm Keith because it did not affect his substantial rights. See TEX. R. APP. P. 44.2(b) ; Hernandez v. State , 176 S.W.3d 821, 822-25 (Tex. Crim. App. 2005) (explaining that Rule 44.2(b) harm analysis applies to violation of Rule 404(b) notice provision).
The purpose of Rule 404(b)'s notice requirement is to prevent surprise.
*263 Hayden v. State , 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). And there is no evidence that Keith was surprised by the State's use of the evidence.
During a bench conference, the prosecutor explained that, while she did not provide defense counsel with formal notice, she nevertheless made defense counsel aware the State intended to use evidence of Keith's attempted suicide:
I did not give notice of it but I feel as though he's been aware because I've presented case law to him prior to that there was-I was going to use this as evidence of guilt. We've had that conversation way in prior to trial. I just did not give formal notice on paper but it is a discussion that we've had on numerous occasion[s] that it was my intent to use his suicide as evidence of guilt in this case and [I] presented case law on that matter.
Defense counsel did not dispute the prosecutor's account during the bench conference, and Keith does not dispute it now on appeal or otherwise argue that he was surprised by the State's use of evidence of his attempted suicide. In fact, the record indicates that Keith anticipated that the State would use the evidence. At trial, Keith presented evidence that he had always maintained his innocence and attempted suicide not because he was guilty but because he was depressed, experiencing financial difficulties, and thought his death might reconcile Lori and Macie, who had been extremely close until Kathryn accused Keith of sexual assault. We overrule Keith's fifth issue.
Conclusion
We affirm the trial court's judgment.

See Tex. Penal Code § 22.021(a)(1)(B).

Like Kathryn, Samantha Clark is a pseudonym.

Again, a pseudonym.

See Tex. Penal Code § 21.02(b).

See United States v. Renville , 779 F.2d 430, 438 (8th Cir. 1985) (holding that "statements of identity to a physician by a child sexually abused" are admissible "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding"); Taylor v. State , 268 S.W.3d 571, 588-90 (Tex. Crim. App. 2008) (citing Renville and holding that party seeking to admit child's hearsay statement to mental-health professional under exception for statements made for medical diagnosis or treatment must show "(1) that truth-telling was a vital component of the particular course of therapy or treatment involved, and (2) that it is readily apparent that the child-declarant was aware that this was the case"); but see Bargas v. State , 252 S.W.3d 876, 896 (Tex. App.-Houston [14th Dist.] 2008, no pet.) ("Because treatment of child abuse includes removing a child from an abusive setting, the identity of the abuser is pertinent to the medical treatment of the child."); Fleming v. State , 819 S.W.2d 237, 247 (Tex. App.-Austin 1991, pet. ref'd) (holding that four-year-old complainant's statements to pediatrician and therapist that identified abuser were reasonably pertinent to medical diagnosis and treatment and thus admissible hearsay in prosecution for aggravated sexual assault); Gamble v. State , No. 01-06-01028-CR, 2008 WL 2548512, at *12 (Tex. App.-Houston [1st Dist.] June 26, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse discretion in overruling defendant's hearsay objection to doctor's testimony relating child-complainant's statements identifying defendant as person who touched her).

At trial, Keith generally objected to the portions of the report that contained Kathryn's statements about "what allegedly happened in this case...." He did not specifically object to Kathryn's statement identifying him as her assailant. See Sonnier v. State , 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) ("When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection.").

Article 38.072 further requires that the offering party provide proper notice to the adverse party and that the child who made the outcry be available to testify. Tex. Code Crim. Proc. art. 38.072, § 2(b)(1), (3).

Although the suicide note was lost by the police, Keith's stepdaughter, Shay Lynn Hood, testified that she read the note and that in it Keith said, "I'm definitely not guilty...."

See also Johnson v. State , No. 01-11-00820-CR, 2013 WL 4680360, at *6 (Tex. App.-Houston [1st Dist.] Aug. 29, 2013, pet. struck) (mem. op., not designated for publication); Alonzo v. State , No. 01-07-00506-CR, 2008 WL 2611887, at *6 (Tex. App.-Houston [1st Dist.] July 3, 2008, pet. ref'd) (mem. op., not designated for publication); Perry v. State , No. 08-12-00285-CR, 2014 WL 3051020, at *3 (Tex. App.-El Paso July 3, 2014, no pet.) (not designated for publication) (holding that jury could consider defendant's "apparent suicide attempt ... as evidence of consciousness of guilt"); Page v. State , No. 03-12-00137-CR, 2013 WL 4487546, at *4 (Tex. App.-Austin Aug. 15, 2013) (mem. op., not designated for publication) (holding that jury could have reasonably inferred from defendant's attempted suicide that he had consciousness of guilt).