**Opinion issued April 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00006-CR

————————————

**DARWIN BERNARD FOSTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1499428**

---

## MEMORANDUM OPINION

A jury found appellant, Darwin Bernard Foster, guilty of continuous sexual abuse of a child, and the jury sentenced him to life imprisonment. *See* TEX. PENAL CODE § 21.02. On appeal, Foster argues that the trial court erred by admitting

evidence from more than one outcry witness and by excluding evidence that the alleged victim's biological father sexually abused her.

We affirm the judgment of the trial court.

## Background

Following the death of her father in approximately 2004, the child complainant in this case, C.S., moved to Houston to live with her mother and stepfather Darwin Foster. She was about five years old, and Foster was about 34 years old. Foster began sexually abusing C.S. shortly after she moved in. C.S. lived with Foster until 2013, when he was removed from the household after another child accused him of sexual abuse. The abuse never stopped and escalated over time.

As a teenager, C.S. developed an eating disorder and began engaging in self-harm. Her family admitted her to a crisis stabilization psychiatric hospital in January 2014 after she had suicidal ideations. As part of her care, she attended a group therapy session where she shared that her stepfather had raped her. Alison Childers, a licensed professional counselor who led the group therapy session, followed up with C.S. individually the next day. C.S. disclosed that Foster had sexually abused her by touching her, kissing her, making her give him oral sex, and raping her three times. Childers reported the outcry to Child Protective Services ("CPS"). The Harris County Sheriff's Office initiated an investigation, but it was suspended after law enforcement was unable to contact C.S.'s mother.

2

C.S. was discharged from the hospital, but her condition worsened. She began cutting herself and attempted suicide. Her family admitted her to another short-term crisis stabilization facility. Upon discharge, she was referred to ongoing therapy. After several sessions with her therapist, Mary Garcia, she disclosed details of sexual abuse. Together, Garcia and C.S. made another report to CPS.

After the second report, the Harris County Sheriff's Office reopened its investigation. Foster was indicted for continuous sexual abuse of a child, and he proceeded to a jury trial in November 2017.

At a pretrial hearing, the court designated two outcry witnesses, Childers, the licensed professional counselor who facilitated the group therapy session at which C.S. disclosed sexual abuse, and Garcia, the therapist who treated C.S. when she disclosed abuse and made a report to CPS.

At trial, C.S.'s mother testified that over the years she did not notice anything unusual about Foster's relationship with C.S, except one time she woke up and found him wearing only boxers and a tank top in bed with C.S. He denied anything inappropriate had happened. She explained that when C.S. became a teenager, she started having psychological and emotional problems, and the family sought help at psychiatric hospitals. C.S.'s mother testified that C.S. is doing well now after receiving therapy, but C.S. still has not told her about the abuse in detail.

Childers explained that in January 2014 she led a group therapy session for teenagers at a crisis stabilization psychiatric hospital. C.S. participated in the session and disclosed that she had been sexually abused by her stepfather. Childers followed up with C.S. the next day. Specifically, C.S. told her that Foster had sexually molested her, touched her, kissed her, forced her to perform oral sex, and raped her three times. Childers reported the outcry to CPS.

Garcia testified that she was C.S.'s individual therapist after she was discharged from another crisis stabilization hospital in June 2015. They met for more than 15 sessions. As C.S. became comfortable, she disclosed details of sexual abuse by her stepfather. She explained that she had been sexually assaulted with a dildo and forced to give oral sex. C.S. told Garcia that she did not tell her mother about the specific instances because she did not want to hurt her mother. C.S. and Garcia called CPS together to make a report.

The investigator from the Harris County Sheriff's Office testified to explain the course of the investigation, including the witnesses he spoke to and the records he subpoenaed.

C.S. testified to the abuse she endured as a child. She explained that she moved in with her mother and Foster when she was five or six years old. Shortly after she moved in, Foster began bathing with her and touching her breasts and

vagina. The family moved to California and returned to Houston when she was about eight years old. During this time, Foster continued to bathe with C.S. and touch her.

When she was about eight years old, Foster started coming into her room in the middle of the night and touching her between her legs as she pretended to sleep. She described that when she was ten or eleven years old, Foster performed oral sex on her before forcing her to perform oral sex on him.

C.S. described an instance of abuse that occurred when her mother gave birth to one of her brothers and spent the night in the hospital. She was about ten years old, and Foster asked her to sleep with him. While she slept in his bed, he kissed her and cuddled her. The next morning, they bathed together, and he placed the water faucet on her vagina for stimulation.

C.S. described that as she got older, the frequency of abuse increased. When she was in sixth and seventh grade, it increased from every other week to every other day to almost nightly. Foster began penetrating her vagina with his fingers. He continued to perform oral sex on her. When she was in seventh or eighth grade, after she told Foster she did not want to take a shower with him, he gave her a dildo and told her to use it. After that, Foster joined her in the shower and penetrated her vagina with his penis.

When C.S. questioned his behavior, Foster told her she was his princess and gave her money and special privileges. He told her it was a secret just between them.

5

She testified that she did not tell her mother because she wanted to protect her. After Foster no longer lived with her family, C.S. developed an eating disorder, cut herself, and became suicidal. She described her hospitalization treatment and disclosing the abuse in group therapy to Childers. She also described her sessions with Garcia and that Garcia helped her understand it was not her fault.

Two other people testified regarding sexual abuse that Foster had inflicted or attempted to inflict on them when they were young girls. M.C., a family friend a few years older than C.S., testified that when she was thirteen years old, she visited Foster's home with her cousin. Foster tried to pull her into a bedroom, but she fought back. Foster grabbed her cousin and tried to pull her into the bedroom. They both ran out of the house. Three years later, when M.C. was sixteen years old, Foster picked her up from work and asked her to allow him to perform oral sex on her. M.C. refused, and Foster eventually drove her home. Years later, but before M.C. turned 21, Foster gave her alcohol and grabbed her buttocks. M.C. testified that she told an aunt about what had happened, and word reached Foster's wife. Foster confronted M.C. and cut off communication between her and his family.

D.B., who was fourteen at the time of trial, also testified that Foster had sexually abused her. Her mother had been friends with Foster. When she was eight years old, he drove her to a fast food restaurant for a meal. After they ate, they got back in Foster's car. D.B. was in the passenger seat. She had a soft drink from the

6

fast food restaurant in her lap, and she knocked it. Foster told her he was going to check to see if the drink had spilled on her pants. He reached over, put his hand on her pants, and touched under her clothing. D.B. was able to remove his hand. Foster then removed his penis from his pants and asked if she wanted to play with it. When she refused, Foster grabbed her wrist and made her touch his penis. After a few seconds, she was able to pull her hand away. Foster then drove her home. When she got home, D.B. told her mother what had happened, and the police investigated, but a grand jury elected not to indict Foster. D.B.'s mother also testified about this incident, consistent with D.B.'s testimony.

Foster testified in his own defense. He explained that he had a normal relationship with C.S.'s mother, and their marriage was not rocky. He denied that he ever took a bath with C.S., and he never saw her naked. He denied that any type of sexual assault or advances had occurred with C.S., M.C., or D.B.

On rebuttal, the State called C.S.'s mother who testified that there were several instances of violence in the house during her marriage to Foster. Once during an argument, C.S. saw Foster put a gun to her mother's head.

The jury found Foster guilty of continuous sexual abuse of a child and sentenced him to life imprisonment. This appeal followed.

7

**Admission of Evidence**

In two issues, Foster asserts that the trial court erred by admitting and excluding evidence. We address each in turn.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if some evidence supports its decision. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *Id.*; *see De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B. Outcry Witness Testimony

Foster contends that the trial court erred by permitting Garcia to testify as an outcry witness after Childers had provided outcry testimony. He argues that her testimony was duplicative of Childers's testimony. He also asserts that Childers and Garcia were both improperly designated as outcry witnesses; Childers did not provide any specific details regarding C.S.'s allegations of sexual assault in the pretrial hearing; Childers's testimony pretrial was inconsistent with the written

summary of her testimony provided by the State; and the State's notice was deficient because it did not provide a summary of Garcia's testimony.

### 1. Applicable Law

Article 38.072 of the Code of Criminal Procedure provides a statutory exception that allows the State to introduce outcry statements, which would otherwise be considered hearsay, made by a child complainant of certain crimes. TEX. CODE CRIM. PROC. art. 38.072; *see also* TEX. R. EVID. 801(d) (defining hearsay), 802, 803. These offenses include continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.072; *see also* TEX. PENAL CODE § 21.02. Under article 38.072, the trial court may admit the statements of a child complainant describing the alleged offense through an "outcry witness." TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3). The outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child made a statement regarding the offense, extraneous crime, wrong, or act. *Id.* The statement must be "more than words which give a general allusion that something in the area of child abuse is going on." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). Outcry witness designations are event-specific, not person-specific. *Polk v. State*, 367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). More than one outcry witness may testify if each witness

testifies regarding different events. *See Lopez*, 343 S.W.3d at 140; *Polk*, 367 S.W.3d at 453.

### 2. Analysis

As a preliminary matter, we determine whether Foster preserved his complaints for appellate review. To preserve a complaint for appellate review, the record must show that an objection was made to the trial court, the grounds for relief were made with enough specificity, and the trial court ruled upon the objection. TEX. R. APP. P. 33.1(a). The issue must comport with the objection made at trial. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). In deciding whether an argument on appeal comports with the objection made at trial, an appellate court "consider[s] the context in which the complaint was made and the parties' shared understanding at the time." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

On appeal, Foster argues that the trial court erred by permitting multiple witnesses (both Childers and Garcia) to testify about the same outcry. He also asserts that (2) Childers and Garcia were both improperly designated as outcry witnesses; (3) Childers did not provide any specific details regarding C.S.'s allegations of sexual assault in the pretrial hearing; (4) Childers's testimony pretrial was inconsistent with the written summary provided by the State, and (5) the State's notice did not provide a summary of Garcia's testimony.

10

Aside from the objection to having multiple outcry witnesses, Foster did not preserve his complaints for appellate review. At trial, Foster did not dispute that Childers or Garcia were improperly designated as outcry witnesses, and he conceded that Childers was an outcry witness after her testimony. He did not object to the trial court's determinations of the reliability of C.S.'s statements to either outcry witness. He did not object to the content of Childers's testimony as it related to the written summary provided by the State, and he did not object to any deficiencies in the notice provided by the State. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b). He also did not assert a general hearsay objection. *See Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (holding that a general hearsay objection is sufficient to preserve error under article 38.072). Foster failed to preserve these claims for appellate review.

We address the preserved claim—that the trial court erred by permitting multiple outcry witnesses. Assuming without deciding that the trial court erred by admitting Garcia's outcry testimony because it was duplicative, we must determine whether the error was harmful.

The improper admission of inadmissible hearsay under Article 38.072 is non-constitutional error. TEX. R. APP. P. 44.2(b). We will consider it harmless if after examining the record as a whole, we are reasonably assured that the error did not influence the jury verdict or had but a slight effect. *Johnson v. State*, 967 S.W.2d

11

410, 417 (Tex. Crim. App. 1998). Improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Lamerand v. State*, 540 S.W.3d 252, 259 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (holding improper admission of outcry testimony was harmless when victim provided the same or similar testimony without objection); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd) (admission of outcry witness's testimony was harmless when several instances of similar testimony were offered without objection, including testimony of complainant, who testified in detail about abuse); *see also Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that admission of detective's outcry testimony was harmless when child "testified in detail about the abuse" and "detailed the same testimony" as detective).

C.S. provided detailed testimony recounting the abuse she endured from Foster for approximately nine years. She testified regarding at least six different instances of abuse, including an incident where Foster forced her to perform oral sex on him and an incident involving the use of a dildo. Apart from one objection to a compound question about how frequently Foster bathed with C.S., Foster lodged no objections to C.S.'s testimony. C.S.'s testimony mentioned all of the instances of abuse that Garcia testified about. The same or similar evidence about which Foster complains was admitted without objection at other points during the trial. Any error

12

in admitting Garcia's outcry testimony was harmless. *See Lamerand*, 540 S.W.3d at 259–60; *Duncan*, 95 S.W.3d at 672; *Zarco*, 210 S.W.3d at 833.

We overrule Foster's first issue.

## C.      Exclusion of Complainant's Sexual History

In his second issue, Foster contends that the court erred by excluding evidence that C.S. had been sexually abused by her biological father. The State responds that the trial court properly excluded the evidence.

### 1.      Applicable law

Evidence of specific instances of an alleged victim's past sexual behavior generally is inadmissible. TEX. R. EVID. 412(a). While there are several exceptions to the general rule excluding specific instances of sexual behavior, the probative value of such evidence must outweigh the danger of unfair prejudice. *Compare* TEX. R. EVID. 412(b)(2) (listing instances when a victim's past sexual behavior is admissible), *with* 412(b)(3) (stating that the probative value of such evidence must outweigh prejudice).

To be admissible, evidence must be relevant. TEX. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." TEX. R. EVID. 401. When assessing the relevance of evidence, courts must consider the purpose for which the proof is being introduced. *Layton v. State*, 280 S.W.3d

13

235, 240 (Tex. Crim. App. 2009). It is essential that there is a direct or logical connection between the proof and the proposition sought to be proved. *Id.*

### 2. Analysis

Foster sought to introduce evidence that C.S. had been sexually assaulted by her biological father. Foster believed that the State had "opened the door" to the topic during direct examination. *See Heidelberg v. State*, 36 S.W.3d 668, 672 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that under the opened-door doctrine, a party cannot intentionally broach a subject and then complain when the subject is pursued by the opposing party). Specifically, Foster argues that the State's question on direct examination asking why C.S. agreed to sleep in bed with her father when her mother was in the hospital having a baby elicited the testimony that opened the door. In response, C.S. stated, "I was just not cognitively aware that that was an inappropriate thing to do between a father or a man and someone that was my age." Outside the presence of the jury, the court ruled that the State had not presented any evidence of sexual abuse by C.S.'s biological father or otherwise opened the door to presentation of such evidence.

On appeal, Foster reurges his argument that the State had in fact questioned C.S. about sexual abuse by her biological father. But after review, we hold that the record does not reflect that the State introduced any evidence of sexual abuse and

14

the trial court did not abuse its discretion in refusing to admit the evidence. *See id.* at 672.

Foster also argues that the evidence was admissible on cross-examination to rebut the false impression that C.S.'s biological father was a "wonderful daddy" and that she was vulnerable after his death. But the State did not introduce any evidence of C.S.'s biological father's character, and even if it had, the trial court would not have abused its discretion in excluding evidence of sexual assault as not relevant to the offense charged or more prejudicial than probative. *See* TEX. R. EVID. 401; *see also* TEX. R. EVID. 412(b)(3) (requiring the probative value of admissible evidence of specific instances of an alleged victim's past sexual conduct to outweigh the danger of unfair prejudice). The trial court did not abuse its discretion in refusing to admit evidence that C.S. had been sexually assaulted by her biological father.

We overrule Foster's second issue.

## Conclusion

We affirm the judgment of the trial court.

                                                    Peter Kelly
                                                    Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish.  TEX. R. APP. P. 47.2(b).