Opinion issued March 19, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00066-CR

————————————

## OSCAR ALEXANDER GOMEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 338th District Court
Harris County, Texas
Trial Court Case No. 1397023

## MEMORANDUM OPINION

Appellant Oscar Alexander Gomez pleaded guilty to the first-degree offense of possession with intent to deliver a controlled substance, weighing at least 200 grams but less than 399 grams. Gomez was placed on 10 years' deferred-adjudication community supervision. Three years later, the State filed a motion to

adjudicate guilt. Based on evidence admitted at the adjudication hearing, the trial court found that Gomez had violated conditions of his community supervision, including that Gomez had committed the offenses of sexual assault and burglary. The trial court adjudged Gomez guilty and sentenced him to 25 years in prison. In two issues, Gomez challenges the adjudication of his guilt.

We affirm.

## Background

In March 2014, the trial court placed Gomez on deferred-adjudication community supervision after he pleaded guilty to the first-degree offense of possession with intent to deliver a controlled substance. The terms and conditions of his community supervision included that he would not commit any new offenses while on community supervision. The conditions also required Gomez to have suitable employment and to make monthly payments for certain fines, fees, and costs.

In December 2017, the State filed a motion to adjudicate Gomez's guilt. The State asserted that Gomez had violated six of the conditions of his community supervision. Among these, the State alleged that Gomez had committed a new criminal offense. Specifically, the State averred that Gomez had committed the offense of sexual assault in February 2017 against an adult woman, B.D. The State alleged that Gomez had "unlawfully, intentionally and knowingly cause[d] the

2

penetration of the anus and sexual organ of [B.D.] . . . by placing [his] sexual organ in the anus and sexual organ of [B.D.], without [her] consent." The State further alleged that Gomez compelled B.D. "to submit and participate" in the sexual assault by using "physical force and violence." The State alleged that B.D. had "not consented" and that Gomez knew that B.D. "was unconscious and physically unable to resist" and "was unaware that the sexual assault was occurring."

In September 2018, the State amended its motion to adjudicate guilt, alleging that Gomez had committed another violation of the law. Specifically, the State alleged that Gomez had committed the offense of burglary.

In January 2019, the trial court conducted an evidentiary hearing on the motion to adjudicate. The State presented evidence to prove that, since being placed on deferred-adjudication community supervision, Gomez had committed the offenses of burglary and sexual assault.

Regarding the sexual-assault offense, the State presented the testimony of B.D., the complainant. B.D. testified that, on February 11, 2017, she went to a downtown Houston club to meet some friends. While there, she met Gomez, and he bought her drinks. She said that she had never met Gomez before that night. B.D. testified that the next memory she has from that night was waking up in Gomez's bedroom. She was completely nude, and Gomez was penetrating her vaginally and anally with his penis. B.D. said that she asked Gomez to stop, but he would not. B.D.

3

testified that, during the sexual assault, Gomez had his hands around her throat, and she could barely breath. B.D. tried to leave the bedroom, but Gomez blocked the door, and pushed B.D. back.

B.D. testified that she waited until Gomez fell asleep and then ran from the house. She stated that she was barefoot and wearing only a shirt belonging to Gomez as she ran down the street to get away. An off-duty police officer saw B.D. and stopped to help her. She was taken to the hospital where she underwent a sexual-assault examination. As part of the examination, vaginal and anal swabs were taken and placed in a sexual assault kit.

Sergeant D. Wareham with the Harris County Sheriff's Office spoke with B.D. at the hospital about the sexual assault. Sergeant Wareham testified that the evidence in B.D.'s sexual-assault kit was submitted for DNA analysis. The analysis showed that the DNA profile from evidence in the sexual assault kit matched Gomez's DNA profile, which was in CODIS, a law-enforcement DNA database.

Gomez testified in his own defense. He acknowledged that he had intercourse with B.D. but claimed it had been consensual.

When asked, Gomez denied several times that he had anal sex with B.D. He claimed that they only had vaginal intercourse. To rebut Gomez's claim, the State offered the testimony of DNA analyst, T. Taylors. She testified that sperm fractions were found on the anal and vaginal swabs from B.D.'s sexual-assault kit. She

compared Gomez's DNA profile with the DNA profiles obtained from sperm fractions on the swabs. Taylor testified that Gomez could not be excluded as the source of the DNA found on the anal and vaginal swabs. She said that, statistically, she would expect to test "another 59 septillion individuals" before she would see the same DNA profile again.

At the end of the adjudication phase, the trial court stated on the record that "all of the paragraphs in the motion to adjudicate are true by a preponderance of the evidence," which necessarily included the allegations that Gomez had committed the offenses of burglary and sexual assault.

The trial court then conducted the punishment phase. The State presented evidence showing that other women had been assaulted by Gomez. At the end of the punishment phase, the trial court adjudicated Gomez's guilt and sentenced him to 25 years in prison.

Gomez now appeals. In two issues, Gomez contends that (1) the evidence admitted at the adjudication hearing was insufficient to support the trial court's finding that he had committed the offense of burglary, and (2) the trial court abused its discretion when it admitted hearsay testimony related to the sexual-assault offense and the burglary offense.

**Adjudication of Guilt**

We review the decision to adjudicate guilt in the same manner as a community supervision revocation in which an adjudication of guilt was not deferred. *See* TEX. CODE CRIM. PROC. art. 42A.108(b); *Leonard v. State*, 385 S.W.3d 570, 572 n.1 (Tex. Crim. App. 2012). Proof by a preponderance of the evidence of a single violation of a condition of community supervision is sufficient to support revocation. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) ("We have long held that 'one sufficient ground for revocation would support the trial court's order revoking' community supervision.") (quoting *Jones v. State*, 571 S.W.2d 191, 193 (Tex. Crim. App. 1978)). Thus, any one of Gomez's community-supervision violations found by the trial court will support the adjudication of Gomez's guilt.

By finding all the State's allegations in the adjudication motion as true, the trial court implicitly found that Gomez had committed the offense of sexual assault against B.D. On appeal, Gomez makes only one complaint regarding that finding.

In his second issue, Gomez contends that the trial court abused its discretion by overruling his hearsay objection to a portion of Sergeant Wareham's testimony relating to the sexual-assault offense. *See Infante v. State*, 404 S.W.3d 656, 662 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that hearsay challenge to trial court's admission of evidence is reviewed for abuse of discretion). Gomez complains that the trial court permitted Sergeant Wareham to testify, over Gomez's hearsay objection, about the description B.D. provided of the man who sexually assaulted

6

her. *See* TEX. R. EVID. 801(d) (defining hearsay as statement, other than one made by declarant while testifying in court, offered to prove truth of matter asserted); TEX. R. EVID. 802 (providing that hearsay is generally not admissible unless exception applies). After overruling Gomez's hearsay objection, Sergeant Wareham testified that "B.D. described the suspect as a middle eastern male around 5'5" average build, with a well-trimmed beard."

Even if we assume that the trial court erred in overruling Gomez's objection, the admission of the complained-of hearsay testimony was harmless error. The admission of a hearsay statement is non-constitutional error; it entitles the defendant to reversal only if it affects the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). A defendant's substantial rights are affected if the hearsay's admission has "a substantial or injurious effect in determining the verdict." *Coleman*, 428 S.W.3d at 162. "We do not overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the verdict or had but a slight effect." *Id.*

Improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *see Lamerand v. State*, 540 S.W.3d 252, 256–57 (Tex.

App.—Houston [1st Dist.] 2018, pet. ref'd) ("The erroneous admission of hearsay does not constitute reversible error if other evidence proving the same fact is properly admitted elsewhere."). In other words, when the erroneous admission of evidence is cumulative of other properly admitted evidence proving the same fact, the erroneous admission is considered harmless. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *see also Burks v. State*, 876 S.W.2d 877, 898 (Tex. Crim. App. 1994) (holding that police officer's erroneously admitted hearsay testimony did not harm defendant when testimony of other trial witnesses proved same facts).

Here, any error in admitting Sergeant Wareham's testimony was harmless because the same or similar evidence was admitted without objection through B.D.'s testimony.

On re-direct examination, B.D. testified as follows:

Q. When you talked to the police at the hospital and they were asking you the medical questions, et cetera, do you remember how you described your perpetrator, the Defendant in this case?

A. That he had a beard.

Q. Is it similar to the one he has today in court?

A Yes.

Q. Do you remember what ethnicity that you thought he was or described him as?

A. I thought he was middle eastern.

Like Sergeant Wareham's testimony, B.D.'s testimony showed that she had provided a description to police of the man who sexually assaulted her. And her testimony of the description was similar to the description that Sergeant Wareham testified B.D. had provided to him. Because B.D.'s testimony proved the same or similar facts, we conclude that, to the extent the complained-of testimony was erroneously admitted, it did not harm Gomez. *See* TEX. R. APP. P. 44.2(b); *Burks*, 876 S.W.2d at 898.

Moreover, considering the whole record, the admission of the complained-of testimony was harmless. Evidence of a defendant's guilt is a factor to consider in a harm analysis. *Motilla v. State*, 78 S.W.3d 352, 360 (Tex. Crim. App. 2002). Here, B.D. testified in detail about the events that occurred before, during, and after the sexual assault. In the courtroom, B.D. identified Gomez as the person who had sexually assaulted her.

Sergeant Wareham testified that he interviewed B.D. at the hospital where she had been taken after being found on the street by an off-duty police officer. He testified that B.D. was upset and seemed to be "in shock." The evidence showed that B.D. underwent a sexual assault examination at the hospital. Gomez's DNA profile matched the DNA profile detected in the biological samples collected from B.D.

In his testimony, Gomez admitted that he had intercourse with B.D. but claimed it had been consensual. He also claimed that he did not have anal intercourse

9

with her. The State then offered its rebuttal witness, T. Taylor, a DNA analyst, who testified that sperm fractions were detected on the anal swabs collected from B.D. Gomez could not be excluded as a contributor to the DNA from the sperm fractions found on the vaginal and anal swabs.

During the sentencing phase, the State offered evidence indicating that other women had been victimized by Gomez in separate incidences. Each had experienced unusual cognitive impairment after drinking in a bar where Gomez was present.

One woman testified that she awoke in Gomez's car while he was driving. She asked him to stop, but he refused. She then jumped out while the car was still moving. Gomez stopped and tried to force her back to the car. During the incident, Gomez struck her in the face. A bystander called police. Photographs taken by police were admitted into evidence, showing the woman's bloody mouth. Additional evidence indicated that Gomez had sexually assaulted at least one other woman before he had assaulted B.D.

Finally, we note that the State did not emphasize the complained-of portion of Sergeant Wareham's testimony during the adjudication or punishment phases.

On this record, we have fair assurance that any error in admitting Sergeant Wareham's testimony about the description B.D. gave to him at the hospital of the man who had sexually assaulted her did not influence the trial court's decision in adjudicating Gomez's guilty or in assessing his sentence or had but a slight effect.

10

Therefore, we hold that the purported error did not affect Gomez's substantial rights and, consequently, was harmless error. *See* TEX. R. APP. P. 44.2(b).

We overrule Gomez's hearsay complaint in his second issue regarding the admission of Sergeant Wareham's testimony. This is the only complaint Gomez raises on appeal related to the trial court's implied finding that he violated the conditions of his community supervision by committing the offense of sexual assault. Because a finding of one violation is sufficient to support adjudication of Gomez's guilt, we need not reach the remaining complaints raised in the first and second issues, which relate to the trial court's implied finding that Gomez also violated the conditions of his community supervision by committing the offense of burglary. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

11

Do not publish. TEX. R. APP. P. 47.2(b).