**Opinion issued March 12, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00324-CR

———————————

**HENRY DAVID COSSETTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1759883**

---

## MEMORANDUM OPINION

Following a bench trial, Henry David Cossette was convicted of murder and sentenced to 45 years' imprisonment. *See* TEX. PENAL CODE § 19.02. On appeal, Cossette contends that the evidence was insufficient to support the trial court's rejection of his self-defense claim. We affirm.

# Background

In February 2022, Sara Goodwin was reported missing by her roommate. Goodwin was known to work as a prostitute on the Bissonnet corridor in Houston. In reporting Goodwin missing, the roommate told authorities that she received a text message from Goodwin three days before. The text said that Goodwin was getting in a car with a guy. The roommate became concerned when Goodwin did not return phone calls, and she drove to Bissonnet looking for her. The roommate traced a ping of the last location of Goodwin's phone to an apartment complex at 8600 South Course Drive, about 1.5 miles away from the Bissonnet corridor. When she tried calling Goodwin, the phone did not ring. The roommate checked the leasing office and knocked on apartment doors, but she could not find Goodwin.

Detective D. Do with the Missing Persons Unit of the Houston Police Department was assigned to investigate the disappearance. The unit canvassed the area, including checking local businesses for surveillance footage. Law enforcement obtained surveillance footage from a car dealership off South Course Drive that showed Goodwin getting into a silver car on the same day that she had texted her roommate.

While the investigation was ongoing, the Homicide Division of the Houston Police Department received a tip that, on the same date that Goodwin went

missing, a tall, slender African American woman had been stabbed, killed, and pushed onto Bissonnet Street.

Two weeks after Goodwin went missing, Cossette's girlfriend called the police to request a welfare check at Cossette's apartment at 8600 South Course Drive. The girlfriend met responding firefighters outside Cossette's apartment and relayed that Cossette had said he could not live with himself anymore because he had done something very bad. When firefighters went inside, they found Cossette had attempted to kill himself by setting a fire using a charcoal burner in the living room of his apartment. Firefighters found him unresponsive, and the apartment was filled with smoke. They extinguished the burner and dragged Cossette out of the apartment. After he received oxygen, Cossette eventually became more alert. Cossette was very upset and stated that he wanted to commit suicide because he had killed a prostitute. He said that two weeks before he had picked up a prostitute in the Bissonnet area, and she pulled out a knife. Cossette claimed that he stabbed her in self-defense and pushed her body out of his car.

Cossette was transported to the hospital where two detectives interviewed him. The trial court admitted into evidence a video recording of this interview. During the interview, Cossette told law enforcement that he picked up a prostitute and brought her back to his apartment. He paid her, but then he asked for his money back because she seemed inattentive. When she refused to return the

3

money, he grabbed her to stop her from leaving. He claimed that she threatened him with a knife, demanded money, and attempted to steal his laptop. He said she got "knocked out." Later in the interview, he told law enforcement that id he pushed her, and she fell and hit her head on a coffee table. While she was semi-conscious, he got on top of her, put his hands around her neck, and used pressure until she stopped breathing.

Cossette told law enforcement that he dismembered her body in the bathtub with a kitchen knife, put the body in multiple trash bags, and dumped the bags in a field. He used a map to show the detectives approximately where he had dumped the bags. He also identified Goodwin in pictures as the person he had killed.

Law enforcement found the trash bags with Goodwin's dismembered body in the approximate location Cossette said he had dumped them. DNA testing from the drawstrings and knot of one of the trash bags showed that both Cossette and Goodwin contributed to the DNA mixture obtained. Autopsy results showed that Goodwin died from homicidal violence with asphyxia and neck compression.

Law enforcement used a chemical reagent to identify nonvisible blood in Cosette's apartment and car. The reagent reacted to nonvisible blood on the bathtub, bathroom sink, bathroom floor, shower curtain, walls, and back of the door. Nonvisible blood was found on a mop near the bathtub and on two kitchen rugs.

Cossette consented to a search of his phone. Data extracted from his phone showed that he had used Google to search for the location where he ultimately disposed of Goodwin's body. He also searched for information about various stages of decomposition and whether a dead iPhone could be tracked. Over the course of a week after Goodwin's death, Cossette searched for missing persons reports on his phone's web browser.

Throughout the bench trial, Cossette's theory was that he acted in self-defense. Following a bench trial, the court found him guilty of murder, implicitly rejecting that defense. Cossette was sentenced to 45 years' imprisonment. He appealed.

## Discussion

In a single issue, Cossette argues that there was insufficient evidence to support the trial court's implicit rejection of his self-defense theory. We disagree.

## A. Applicable Law and Standard of Review

Under the Penal Code, a person commits murder if he "(1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1)–(2). The Penal Code also specifies that "[i]t is a defense to prosecution that the conduct in question is justified under" chapter nine. *Id.* § 9.02. One justification listed in that chapter is

5

self-defense, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a).

The defendant has the initial burden to produce some evidence to support a claim of self-defense. *Mitchell v. State*, 590 S.W.3d 597, 604 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)). Once the defendant produces some evidence, the burden shifts to the State, which bears the ultimate burden of persuasion to disprove the raised defense. *Mitchell*, 590 S.W.3d at 604 (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). "This burden does not require the production of additional evidence rebutting self-defense; it requires the State to prove its case beyond a reasonable doubt." *Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018); *Zuliani*, 97 S.W.3d at 594.

A guilty verdict is an implicit finding rejecting the defendant's self-defense theory. *Saxton*, 804 S.W.2d at 914; *Dearborn*, 420 S.W.3d at 372. "Because the State bears the burden of persuasion to disprove a" claim of self-defense "by establishing its case beyond a reasonable doubt, we review . . . sufficiency challenges to the . . . rejection of such defense under" the *Jackson v. Virginia*

6

sufficiency standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *cf. Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (providing that "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense."). Under that standard, we must examine all evidence in the light most favorable to the verdict and determine whether a rational trier of act could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Mitchell*, 590 S.W.3d at 604; *Dearborn*, 420 S.W.3d at 372–73. Accordingly, "[t]he trier of fact is free to accept or reject defensive evidence on the issue of self-defense," and appellate courts "presume the trier of fact resolved any conflicting inferences and issues of credibility in favor of the judgment." *Dearborn*, 420 S.W.3d at 373. "We must be mindful that self-defense is a fact issue to be determined by the [trier of fact] and that the [trier of fact] is free to accept or reject any defensive evidence on the issue." *Mitchell*, 590 S.W.3d at 604; *see Saxton*, 804 S.W.2d at 913–14; *McFadden v. State*, 541 S.W.3d 277, 285 (Tex. App.—Texarkana 2018, pet. ref'd) ("Moreover, when there is evidence, if believed, to support a claim of self-defense, but other evidence, if

believed, to support a conviction, an appellate court will not weigh in on this fact-specific determination as this is a function of" the trier of fact.)

**B.    Analysis**

In complaining of the sufficiency of the evidence, Cossette first contends that the evidence is legally insufficient to reject his self-defense claim because the State did not present evidence refuting his version of events. Cossette's argument attempts to impose a burden on the State to affirmatively produce additional evidence refuting his claim, but the State's burden does not require the production such evidence. In response to a self-defense claim, the State has a burden of persuasion to prove its case beyond a reasonable doubt. *Dearborn*, 420 S.W.3d at 372. Moreover, the factfinder "is permitted to reject even uncontradicted defensive testimony, so long as its rejection of that evidence was rational in light of the remaining evidence in the record and is not contradicted by indisputable objective facts." *Braughton*, 569 S.W.3d at 612.

Viewing the evidence in the light most favorable to the verdict, the trial court could have reasonably concluded that Cossette's self-defense claim was not credible. Cossette's explanation of what happened was inconsistent. When first removed from his apartment, he told emergency medical personnel that he picked up a prostitute, and she pulled a knife on him. He said that he stabbed her in self-defense and pushed her body out of his vehicle.

When interviewed by the police, Cossette's story changed two twice. He first told police that he picked up a prostitute and brought her back to his apartment. He paid her but she seemed distracted and inattentive, so he told her she could leave if she gave him the money back. When she refused the refund, he grabbed her back to prevent her from leaving his apartment. According to Cossette, she suddenly became aggressive, pulled out a pocketknife, and tried to steal from him. He said that a fight ensued, and Goodwin was "knocked out." She fell to the floor and did not react when he tried to wake her. During the interview, he said that he was only trying to restrain her, but she fought him and tried to stab him.

Later in the interview, Cossette changed the story again. He said that he pushed Goodwin, causing her to trip and hit her head. He told law enforcement that he was not sure whether she lost consciousness and said that she was still "trying to react" or "trying to wake up." Cossette said that he immobilized Goodwin by using one leg to pin down her arm holding the knife and the other leg to apply pressure to her neck. Later in the interview, Cossette denied choking Goodwin and said that he only applied pressure to her chest with his hands.

Goodwin's inconsistent statements support the trial court's conclusion that his self-defense claim was not credible. "[I]nconsistencies in a defendant's story can provide evidentiary support for a conviction." *Nisbett v. State*, 552 S.W.3d 244, 266 (Tex. Crim. App. 2018); *see also Kemmerer v. State*, 113 S.W.3d 513,

9

515 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (recognizing that jury could consider defendant's improbable explanation for how child was injured and his "changing versions" for how the injury occurred as evidence of guilt).

From the evidence presented at trial, a rational trier of fact could have found that Cossette's use of force was neither reasonable nor justified. The trial court was free to disbelieve Cosette's claim that the complainant continued to attempt to attack him with a knife while she was on the floor in an unconscious or semi-conscious state. Once Goodwin was unconscious, or semi-conscious, she no longer posed an immediate threat of danger to Cossette. The trial court could have determined from the evidence that Cossette's belief that deadly force was immediately necessary to protect himself was not a reasonable belief. *See* TEX. PENAL CODE § 9.31.

The trial court could have considered Cossette's conduct after the offense as inconsistent with self-defense. It is undisputed that Cossette dismembered the complainant's body in his bathtub and disposed of her remains in a remote location. Efforts to conceal the body tend to refute Cossette's claim that he killed the complainant in self-defense. *See Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (defendant's attempt to hide incriminating evidence was circumstantial evidence of guilt that supported jury's rejection of his self-defense claim). The court also heard testimony that Cossette

10

attempted to kill himself because he could no longer live with himself on account of what he had done. *See Lamerand v. State*, 540 S.W.3d 252, 261 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (evidence of defendant's attempted suicide after offense shows consciousness of guilt).

Circumstantial evidence further supports the trial court's rejection of the self-defense claim. The trial court heard testimony that the complainant was a peaceful person who was not known to carry a knife. The detective testified that in his experience, prostitutes do not typically carry weapons. The autopsy results contradict Cossette's statement that he did not choke Goodwin.

Viewing the evidence in the light most favorable to the verdict, we conclude that the factfinder rationally could have found that each element of the charged offense was proven beyond a reasonable doubt and rationally could have rejected Cossette's self-defense claim. The evidence is sufficient to support appellant's murder conviction. We overrule his sole point of error.

**Conclusion**

We affirm the trial court's judgment.

Susanna Dokupil
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).

12